UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL WELCH,**

       Plaintiff,

vs.

**CITY OF MELVINDALE,** *a political Subdivision of the State*; **MELVINDALE PUBLIC SAFETY COMMISSION,** *a political advisory body of the City of Melvindale*; **JEFFERY BOLTON, KEVIN MCISAAC, MARTHA MCDANIEL, PATRICIA HALL, JOSEPH ALVARADO,** *and* **LAWRENCE COOGAN,** *individuals, sued in their official and personal capacities,*

       Defendants.

Case No:  18-cv-11450
Hon. Laurie J. Michelson
Mag. Mona K. Majzoub

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/Fax (248) 258-7881
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**PLUNKETT COONEY**
Audrey J. Forbush (P41744)
Attorney for Defendants, City of Melvindale, Melvindale Public Safety Comm., Bolton, McIsaac, McDaniel, Hall & Alvarado
Plaza One Financial Center
111 E. Court Street- Suite 1B
Flint, Michigan 48502
(810) 342-7014/Fax (810) 232-3159
aforbush@plunkettcooney.com

_____

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION RESTRAINING DEFENDANTS FROM FURTHER ACTS OF RETALIATION AGAINST PLAINTIFF FOR HIS TESTIMONY AS A WITNESS IN FEDERAL CIVIL LITIGATION**

1.     Plaintiff, Michael Welch, by and through his attorneys, Deborah Gordon Law, hereby moves this Court for a Preliminary Injunction under the authority of Fed. R. Civ. P. 65(a), enjoining Defendants Defendants City of Melvindale, Melvindale Public Safety Commission, Jeffrey Bolton, Kevin McIsaac, Martha McDaniel, Patricia Hall, Joseph Alvarado, and Lawrence Coogan, pending trial on the merits, from any and all further acts of intimidation and retaliation against him, and in particular, termination of his employment, and the extinguishment and/or decimation of his retirement benefits because of his testimony as a witness in the federal civil litigation of Chad Hayse (United States District Court, Eastern District of Michigan, docket number 17-cv-13294), including any further action by Defendants to harm or penalize Plaintiff in the terms, benefits, and conditions of his employment with the City of Melvindale. Plaintiff sought concurrence for this Motion on June 1, 2018, but concurrence was denied.

Unless Defendants are restrained or enjoined by order of this Court, Plaintiff will suffer immediate and irreparable injury, loss, and damages **as early as June 12, 2018**, as more fully alleged and described in Plaintiff's Complaint and the Brief in Support of Plaintiff's Motion for Preliminary Injunction under F.R.C.P. 65, filed contemporaneously herewith.

Respectfully submitted,

Dated: June 1, 2018                         **DEBORAH GORDON LAW**

<u>/s/Deborah L. Gordon (P27058)</u>
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL WELCH,**

      Plaintiff,

vs.

                                        Case No: 18-cv-11450
                                        Hon. Laurie J. Michelson

**CITY OF MELVINDALE,** *a political*                 Mag. Mona K. Majzoub
*Subdivision of the State*; **MELVINDALE**
**PUBLIC SAFETY COMMISSION,** *a political*
*advisory body of the City of Melvindale*;
**JEFFERY BOLTON, KEVIN MCISAAC,**
**MARTHA MCDANIEL, PATRICIA HALL,**
**JOSEPH ALVARADO,** *and* **LAWRENCE**
**COOGAN,** *individuals, sued in their official and*
*personal capacities,*

      Defendants.

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/Fax (248) 258-7881
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**PLUNKETT COONEY**
Audrey J. Forbush (P41744)
Attorney for Defendants, City of
Melvindale, Melvindale Public
Safety Comm., Bolton, McIsaac,
McDaniel, Hall & Alvarado
Plaza One Financial Center
111 E. Court Street- Suite 1B
Flint, Michigan 48502
(810) 342-7014/Fax (810) 232-3159
aforbush@plunkettcooney.com

_____

**PLAINTIFF'S BRIEF IN SUPPORT FOR A PRELIMINARY INJUNCTION
RESTRAINING DEFENDANTS FROM FURTHER ACTS OF
RETALIATION AGAINST PLAINTIFF FOR HIS TESTIMONY AS A
WITNESS IN FEDERAL CIVIL LITIGATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iii

I.      INTRODUCTION.....................................................................................1

II.     FACTUAL BACKGROUND....................................................................1

Defendants Attempt to Use Automobile Impound Revenues to Get Out of Debt ...................1

Plaintiff Assists in Disciplining Matthew Furman.........................................................3

Plaintiff Testifies at Sham Proceeding Ending in the Unlawful Termination of
Police Chief Chad Hayse ................................................................................6

Defendants Retaliate Against Plaintiff for Testifying in Support of Hayse ..............................8

Defendants Further Retaliate Against Plaintiff for his Testimony in a Federal
Civil Lawsuit...........................................................................................11

III.    STANDARD OF REVIEW.....................................................................15

        A.      Any Factual Issues in Dispute Should be Resolved in an Evidentiary
                Hearing ................................................................................16

        B.      Plaintiff has a Strong Likelihood of Success on the Merits...............................18

                1.      Count 1- Defendants Retaliated Against Plaintiff's Exercise of
                        His First Amendment Rights When They Publically Stated
                        that Plaintiff Perjured Himself; Suspended Him for 30 Days;
                        and Threatened to Suspend, Demote, and/or Terminate His
                        Employment Based on His Testimony in a Federal
                        Civil Lawsuit ................................................................18

                        a.      Plaintiff Engaged in Protected Conduct ........................19

                        b.      Plaintiff Suffered A Sufficiently Adverse Action.....................22

c.    Defendants' Adverse Actions Were Motivated by his
Protected Conduct and Would Not Have Been the Same
Absent Plaintiff's Protected Conduct .............................................24

C.    Plaintiff, Witnesses, and the Court Will Suffer Irreparable Harm
without Injunctive Relief .........................................................................25

D.    The Balance of Harm Decidedly Favors Plaintiff ...............................................28

E.    The Public Interest Would Be Served by Granting the Requested
Injunctive Relief ........................................................................................29

IV.    Conclusion.................................................................................................................30

Certificate of Service................................................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*AFT Michigan v. State of Mich.*,
   No. CIV. 06-10612, 2006 WL 335712 (E.D. Mich. Feb. 14, 2006)....................26

*AT&T Co. v. Winback & Conserve Program*,
   42 F.3d 1421 (3d Cir. 1994) ......................................................................29

*Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*,
   110 F.3d 318 (6th Cir. 1997) .................................................................15

*Bonnel v. Lorenzo*,
   241 F.3d 800 (6th Cir. 2001) ..................................................................25

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
   511 F.3d at 535 (6th Cir. 2007) ..............................................................16

*Conn v. Bd. of Educ. of City of Detroit*,
   586 F. Supp. 2d 852 (E.D. Mich. 2008) ................................................ 16, 18, 19

*Conn v. Gabbert*,
   526 U.S. 286 (1999) ................................................................................18

*Connection Distrib. Co. v. Reno*,
   154 F.3d 281 (6th Cir. 1998) ............................................................ 29, 30

*Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*,
   477 F.3d 807 (6th Cir.2007) ....................................................................22

*Detroit & Toledo Shore Line R.R. Co. v. Bhd. of Locomotive Firemen &
   Enginemen*,
   357 F.2d 152 (6th Cir. 1966) ..................................................................16

*Ely v. Dearborn Heights Sch. Dist. No. 7*,
   150 F. Supp. 3d 842 (E.D. Mich. 2015) ............................................... 22, 23

*Equal Employment Opportunity Comm'n v. Credit Consultants, Inc.*,
   532 F. Supp. 11 (N.D. Ohio 1981) ..........................................................15

*Federoff v. Walden*,
    1978 WL 34 (S.D. Ohio Mar. 24, 1978) ..................................................... 27, 28

*Fritz v. Charter Twp.*,
    592 F.3d 718 (6th Cir.2010) ...............................................................................23

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
    23 F.3d 1071 (6th Cir. 1994) ...............................................................................29

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006) ............................................................................................20

*Hillside Prods. Inc. v. Duchane*,
    249 F. Supp. 2d 880 (E.D. Mich. 2003) .............................................................25

*JD Norman Indus., Inc. v. Metaldyne, LLC*,
    2016 WL 1637561 (E.D. Mich. Apr. 26, 2016) ..................................................26

*Kerwin v. Paul Revere Life Ins. Co.*,
    6 Fed. App'x 233 (6th Cir. 2001) .......................................................................17

*Kreuzer v. Brown,*
    128 F.3d 359 (6th Cir.1997) ...............................................................................19

*Lane v. Franks*,
    134 S. Ct. 2369 (2014).........................................................................................19

*Leary v. Daeschner,*
    228 F.3d 729 (6th Cir.2000) ...............................................................................19

*L'Orange v. Med. Protective Co.*,
    394 F.2d 57 (6th Cir. 1968) ................................................................... 26, 27, 29

*Matthews v. Ishee*,
    486 F.3d 883 (6th Cir. 2007) ..............................................................................17

*Memphis Police Ass'n v. City of Memphis*,
    No. 08-2124, 2008 WL 11411356 (W.D. Tenn. Mar. 11, 2008) .........................16

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977) ............................................................................................19

iv

*Pacheco v. Waldrop*,
    No. 5:13-cv-00044, 2013 WL 2581016 (W.D. Ky. June 11, 2013).....................17

*Pickering v. Board of Education,*
    391 U.S. 563, 88 S.Ct. 1731 L.Ed.2d 811 (1968) .................................... 19, 20, 23

*R.L. Polk & Co. v. Infousa, Inc.*,
    230 F. Supp. 2d 780 (E.D. Mich. 2002) ..............................................................15

*Sowards v. Loudon County, Tenn.,*
    203 F.3d 426 (6th Cir.2000) ...............................................................................19

*Thaddeus–X v. Blatter,*
    175 F.3d 378 (6th Cir.1999) ........................................................................ 19, 22

**Other Authorities**
42 U.S.C. § 1983 ............................................................................................. 17, 18

## I.     INTRODUCTION

Plaintiff Michael Welch served as a Melvindale police officer for 20 years. *See* Dkt. # ¶ 1. In Defendants' own words, Plaintiff exhibited "peerless performance…marked by unsurpassed efficiency and excellence." **A**, Jones Dep. 46:15-18; **B**, Kennaley Dep. 10:18-11:13; **C**, Bolton Dep. 180:13-6; **D**, Commendation of PSC. However, when Plaintiff opposed the rogue and unlawful behavior of his subordinate, Melvindale Police Corporal Matthew Furman (who single-handedly generated tens-of-thousands of dollars in revenue for the City) and refused to go along with the City's witch hunt against the only other command officer who had stood against Furman—former Melvindale Police Chief Chad Hayse—they decided to end his career. Defendants do not like Plaintiff's testimony, and have therefore usurped the role of the courts in administering the law, by publically condemning Plaintiff as a "perjurer" and seeking to terminate his employment. This Motion arises out of March 2018 testimony given in the federal civil court case of Hayse v. City of Melvindale, et. al., Case No. 17-cv-13294, which Defendants publically stated is the reason for an upcoming hearing to terminate Plaintiff and extinguish his employment, retirement benefits, good name in the community, and future employment prospects.

## II.     FACTUAL BACKGROUND

### Defendants Attempt to Use Automobile Impound Revenues to Get Out of Debt

1

Upon information and belief, in November 2011, the City of Melvindale had accrued so much debt that it was placed under a deficit elimination plan overseen by the State of Michigan's Department of the Treasury. **E,** Bazman Dep., 103:16-25. By 2015, the deficit elimination plan was a "huge" issue for the City. Defendants were eager to avoid being placed under an Emergency Manager by the State. **F,** Barnes Dep., 13:17-20; 16:23-25; 17:1-4; **G,** July 12, 2016 PSC Mtg. 54:2-12. Well into their five-year deficit elimination plan, but with no end to the debt in sight, Defendants sought to expand the City's revenue streams by changing towing contractors. **E,** Bazman Dep.**,** 104:12-25; 105:1-11. In May 2015, the City awarded the contract to Goch & Sons Towing.

The City's 2015 contract with Goch & Sons permitted it to keep at least 15% of every towing fee collected by the Melvindale Police. Goch's proposal sought "to change the profitability of the City's current towing practices and assist in creating an immediate stream of cash flow for the City of Melvindale." **H,** Goch Proposal and Fees at 1 (emphasis added). The contract imposed a laundry-list of costly fees on citizens that allowed Goch and the City to generate abundant amounts of income. The City Council selected Goch as the towing contractor, because, "Goch would generate the most revenue for the City." **E,** Bazman Dep., 132:3-5. The number of impounds skyrocketed when Goch assumed impounding duties on June 14, 2015. In 2016 the City brought in $459,129.00—nearly the same amount of

revenue generated during the entire term of its contract with the previous contractor. **I,** Revenue Summaries**.**

### Plaintiff Assists in Disciplining Matthew Furman

Furman almost single-handedly brought in the tens-of-thousands of dollars Melvindale generated each month in impound revenue. At times, Furman impounded between eight and 11 cars in a single day. **J**, Furman Dep. at 148:14-8, 107:1-7; **K**, Complaint for Hayse's Termination at 11; Furman was so eager to impound vehicles that he relied on unreliable information regarding drivers' insurance coverage in defiance of his superiors' orders. **L,** Nolin Dep. 117: 5-24; 99:13-21; **J,** Furman Dep., 325:7-326:6. Furman even used his personal cell phone to call Goch's drivers (in violation of Melvindale Police Department Policy) in order to expedite the impound process. *Id. at* 221:21-222:6; **L,** Nolin Dep., 17:2-23. Furman boasted to his coworker, Detective Brandon Nolin that two City Council members and the City Administrator told him that, "he needed to keep towing cars in order to make the City money because we had a deficit." *Id.* at 118:9-15.

In 2015 and 2016, Plaintiff and, then-Police Chief Chad Hayse, had no choice but to discipline Furman. Throughout Furman's three-year-long career as a police officer, he received dozens of citizen complaints alleging he was rude, improperly enforced the traffic code, inflicted verbal and physical abuse on

citizens and prisoners, and that he displayed racial biases, and poor decision-making capabilities[1]. In 2015, the Chief directed Furman to seek psychological evaluation and treatment. **J,** Furman Dep. at 66:10-17; **M**, Hayse Dep. at 153: 4-7.

In February 2016, Plaintiff received a verbal citizen complaint from a woman whose vehicle had been impounded by Furman. Through his investigation, Plaintiff substantiated that Furman improperly stopped the vehicle, inappropriately escalated the encounter, and falsely arrested the woman by removing her from her vehicle using a wrist lock and placing her in handcuffs, merely to impound her vehicle. **N**, Wielichowski at 3-4. Furman also placed the woman and her two infant children in physical jeopardy by removing them from the vehicle onto a busy street and having them transported without proper child restraints. Plaintiff reported to the Chief that Furman had no explanation for his actions, that he had been counseled multiple times without improvement, and as a result Plaintiff "could not trust Furman to do the right thing." On the basis of Plaintiff's information, Hayse suspended Furman for three days. *Id.* at 4; **R**, Welch Dep. 71:1-72:11.

The suspension infuriated Furman, who promptly restricted himself to only impounding abandoned vehicles as an act of retaliation. **L,** Nolin Dep. at 29:23-30:17; 32:13-23. The City immediately experienced an appreciable decrease in

---

[1] Plaintiff has not attached the actual citizen complaints to this brief because they are extremely voluminous. Plaintiff is prepared to provide copies of these documents to the Court, if the Court wishes to review them.

revenue. In May 2016, the City generated a paltry $9,157.00 from impounds; merely another $9,118.00 from impounds in June 2016, and only $7,018.00 in July 2016. **O**, May-July 2016 Revenue Summaries.

On June 16, 2016, Furman arrested a suspected burglar, McClintock. As Furman placed the compliant McClintock into his patrol car, he shoved McClintock's head into the doorframe, splitting it open. **L**, Nolin Dep., 129:24-130:12; 41:15-24; **P**, McClintock Investigation at 19**.** Furman denied McClintock medical attention, and told Plaintiff that McClintock was unharmed. *Id*. at 10, 11, 15, 19. Furman suspiciously declined to take a new booking photograph of McClintock, claiming that the camera was broken. *Id.* at 10-12**.** Nolin and Lieutenant John Allen had both observed Furman's excessive force against McClintock. *Id.* at**.** 7, 16-18. They interviewed McClintock, photographed his injuries, and provided all the information to the Chief. *Id.* at 7, 13-4, 16-18.

On July 4, 2016, Furman was assisting Officers Lane and Ginther in arresting Robert Crosslin. Crosslin was on his knees ready to be handcuffed when Furman violently tackled him to the ground, climbed on top of him, and shouted at him to stop resisting. **Q**, Crosslin Investigation at 6-7. Officers Lane and Ginther immediately reported this incident to Plaintiff, who directed them to submit written statements to the Chief. *Id.* at 6-8; **R**, Welch Dep. at 19:1-24. Furman submitted his own lengthy statement of his version of the events surrounding Crosslin's arrest on

5

July 5, 2016. *Id.* at 9-14. Based on this investigation, Hayse suspended Furman with pay. *Id.* at 15. After concluding the McClintock investigation and receiving Furman's version of the events a few weeks later, Hayse determined that further disciplinary action was needed. **S**, Suspension Correspondence. Hayse notified Furman that his suspension was changed to without pay. Significantly, Hayse stated that he planned to terminate Furman—without drastic action by Defendants, the City would lose the revenue Furman generated for good. **P**, McClintock Investigation at 24; **J,** Furman Dep. 280:9-24; **L**, Nolin Dep. 157:20-158:4.

### Plaintiff Testifies at Sham Proceeding Ending in the Unlawful Termination of Police Chief Chad Hayse

Defendants and other officials could not countenance Plaintiff and Hayse's investigation into and discipline of Furman, and Hayse's plans to terminate Furman, which resulted in Furman being unable to impound vehicles for a period of time. In late July or early August 2016, the City Council unanimously agreed to terminate the Chief. **F,** Barnes Dep., 129:3-131:24.

The City Council unanimously voted to ratify its earlier decision to terminate Hayse after a two-day sham termination proceeding held on August 29 and 30, 2016. *Id.* at 129:3-131:24. On August 29, 2016, Hayse called Plaintiff as a witness in support of his contention that Defendants' allegations of misconduct were false. Plaintiff testified, in pertinent part that:

Q (By Hayse): Lieutenant, have you ever heard me make disparaging remarks regarding any public official, appointed official, or Michael Goch from Goch & Son's Towing?

A: No direct. We've had personal conversations in regards to the way the tow contract had been warranted, but no personal attacks in front of anybody else in personal conversation, yes.

Q: Never heard me come up to the front desk and make any sort of announcement or disparaging remark about not towing vehicles because Goch & Son's was our tow provider as of June of 2015?

A: Absolutely not. In fact, you had offered an incentive to officers to tow cars. **T**, Aug. 29, 2016 Proceeding 145: 5-17.
*************************************************************

Q (By Guzall): Okay. And did—in this personal conversation that you say you had with the chief in regards to Goch & Son's, did he say any derogatory things about Goch & Son's?

A: No.

Q: Okay. So what other officers have testified in regards to negative comments as to Goch & Son's being made by the chief of police, you're saying you have not heard those comment [sic], correct?

A: I have not heard those comments, no, sir.

Q: Okay. So Chief Hayse has not often ordered officers to not make that, quote, unquote, "fucking Goch anymore money." You haven't heard that from—

A: No, I have not.
*************************************************************

Q: Have any other officers told you that Chief Hayse made those statements?

A: No, they have not. *See id.* at 149:21—150:16.

7

## Defendants Retaliate Against Plaintiff for Testifying in Support of Hayse

Plaintiff's truthful testimony—that although he had heard Hayse criticize the Mayor and Goch in private, he never heard Hayse do so in front of their subordinates—did not fit into Defendants' plan to fire Hayse. Defendants took immediate steps to retaliate against Plaintiff. On September 7, 2016—merely 9 days after Plaintiff's August 29 testimony, Coogan served him with a one-page, "Complaint for Suspension, Demotion, and/or Termination of Michael Welch." In pertinent part, Jeffrey Bolton, the Chair of the Melvindale PSC accused Plaintiff of "lying to Mayor and City Council at a public hearing on 8/29/2016." The document gave absolutely no indication of what "lie" Plaintiff had told. **U**, Sept. 2016 Complaint Against Plaintiff. These charges were a pretext for First Amendment retaliation. Bolton testified that Coogan wrote the charges, and Bolton signed off on them. **C,** Bolton Dep. 198: 12-20. However, when asked to explain the substance of the allegations—particularly, what actual evidence Bolton had indicating Plaintiff's guilt—Bolton was unable to do so[2].

Plaintiff was convinced that he would be fired. Out of sheer desperation, Plaintiff resolved to do whatever he could to stay employed and retain his pay and retirement benefits. **R**, Welch Dep. 144:23-146:11. The day before his trial board,

---

[2] **C**, Bolton Dep. 204:11-21; 205:11-207:22; 208:6-209:3; 214:5-14; 215:14-17; 217:23-218:21; 219:1-220:13.

Plaintiff met with the Mayor, and asked her to tell him what supposed "lie" he had told to her and the City Council on August 29, 2016. Plaintiff also requested to examine the transcript of the August 29, 2016 proceeding. The Mayor (falsely) told Plaintiff that when asked whether Hayse had ever said anything negative about the Mayor or Goch, he had replied no. *Id.* at 136:6-137:22. On Coogan's advice, the Mayor refused to let Plaintiff see a copy of his testimony before his disciplinary trial board. *Id.*

Before the trial board began, Plaintiff wrote a statement addressing Defendants' allegations. Plaintiff reiterated that, in a few private conversations with Plaintiff, Hayse said negative things about the Mayor and Goch. Plaintiff explained that Hayse "would vent to me at times." **V**, Welch Statement. The statement flatly denied the remainder of the charges. Plaintiff's statement is entirely consistent with his August 29, 2016 testimony, where he recalled that in private conversations, Hayse criticized the Mayor and Goch. *Id.;* **T**, Aug. 29, 2016 Proceeding 145: 5-17; 149:21—150:16. Welch never admitted to lying, or stated that he had lied under oath at his disciplinary trial board in front of the PSC. **R**, Welch Dep. 146:12-147:15.

On the basis of this statement, Defendants mitigated the proposed termination to a 30-day suspension without pay. Defendants also extracted a promise from Plaintiff that he would, "render truthful testimony if called upon to

9

do so, regarding former Police Chief Chad Hayse and statements he admitted he heard the former Chief make." **W**, Sept. 13, 2016 PSC Minutes at 3. This was clearly Defendants' attempt to ensure that Plaintiff's future testimony in the forthcoming Hayse litigation would support their version of events, and exonerate them of any wrongdoing. In light of the immense pressure and scrutiny on him because of his support for Hayse, in January 2018, Plaintiff opted for an early retirement date of August 31, 2018. He is currently in an inactive duty status, using a combination of accrued sick and annual leave to bide time until his retirement date. **X**, Welch Aff. ¶ 16.

It is undisputed that no record of the closed-session of the PSC in which Plaintiff's disciplinary trial board was convened exists. **Y**, Defs. Resp. to Pl. 2nd Set of Discovery in Hayse v. City of Melvindale, et. al. at 18. Coogan and Bolton testified that the only evidence of what transpired during the trial board is their memories and subjective opinions. **Z**, Coogan Dep. at 99:11-100:5; **C**, Bolton Dep. at 181:23-182:8. Defendants are poised to ruin the career of a life-long public servant with an unimpeachable record for honesty and efficacy over nothing more than their pretextual personal opinions that he gave allegedly false testimony at the August 29, 2016 Hayse termination proceeding. However, the fact is, Defendants disciplined Plaintiff because his testimony was unfavorable to Defendants' position in the Hayse matter.

**Defendants Further Retaliate Against Plaintiff for his Testimony in a Federal Civil Lawsuit**

On March 28, 2018, counsel for Hayse took the subpoenaed deposition of Plaintiff. **R,** Welch Dep. Plaintiff's truthful testimony was uncontrovertibly favorable to Hayse. In pertinent part, Plaintiff testified that:

- Furman did not apply common sense and discretion on the job. Despite counseling by Plaintiff, Chief Hayse, and numerous other supervisors, Furman's bad behavior and poor judgment persisted. *See* **R**, Welch Dep. 21-23; 55-6.
- Furman's obsession with towing caused manpower and safety issues for the Department. *See id.* 50-2.
- Plaintiff's investigation substantiated that Furman used excessive force against a citizen in February 2016. *See id.* 14-16; 60-9.
- Furman impounded cars with elderly, frail, sick, and infant passengers when, under the totality of the circumstances, he should not have left those passengers without transportation. *See id.* 71.
- Plaintiff's investigation substantiated that Furman used excessive force against Richard Crosslin in June 2016. *See id.* 19-20; 73-75.
- Furman obtained legal advice directly from Coogan regarding his 2016 suspensions. *See id.* 81.
- Plaintiff and Chief Hayse communicated to City officials that the Melvindale Police Department had negative dealings with Goch & Son's in the past; and that Goch was charging citizens for services he did not perform, but their concerns were ignored. *See id.* 37; 45-6.
- The City Administrator stated that if the Melvindale Police ensured impounding revenues remained high, he could justify raises for the officers in their ongoing contract negotiations. *See id.* 38.
- Neither Plaintiff nor Chad Hayse called the Mayor names in front of subordinate officers. *See id.* 92.
- Hayse was fired because he disciplined Furman, who generated significant revenue for the City. *See id.* 104.
- Plaintiff's own discipline was not conducted pursuant to the Department's rules and regulations. Coogan falsely explained that he and the Public Safety Commission investigated the allegations of wrongdoing against Plaintiff because Allen was only an interim Chief.

11

However, during that time Allen investigated and disciplined two other officers. *See id.* 123.

- After seeing what happened to Hayse, Plaintiff was confident that Defendants had also predetermined to fire him. As a result, Plaintiff decided to try to persuade the PSC to suspend rather than terminate him. *See id.* 133.
- Three of the five Commissioners openly called for Plaintiff's termination. *See id.* 135.
- The Mayor and Coogan withheld information from Plaintiff that he could have used to exonerate himself, namely the transcript and/or audio recording of the August 29 and 30, 2016 hearing. *See id.* 136-7.
- Plaintiff never lied or admitted to lying under oath during any official proceeding. *See id.* 146-7; 207-9.
- Plaintiff's investigations of Furman's misconduct in spring and summer 2016 directly led to his own September 2016 trial board and suspension. *See id.* 216.

This testimony, again favorable to the Chief, infuriated Defendants. Counsel for the City expedited delivery of the transcript, which was forwarded to both parties via email on March 30, 2018. **AA**, Email Receipt of Welch Dep.

On or about April 9, 2018, Coogan requested that Lieutenant Daniel Jones and Lieutenant Robert Kennaley, both subpoenaed witnesses in the Hayse case, meet with him in his office. **X**, Welch Aff. ¶ 22. Coogan had Plaintiff's March 2018 deposition transcript with him when he told Jones and Kennaley that Plaintiff had perjured himself. He even offered to let them read it. *Id;* **A**, Jones Dep. 43:12-44:6; **B**, Kennaley Dep. 76:12-77:15. With Jones and Kennaley in his office, Coogan proceeded to place a telephone call on speakerphone to Chester Kulesza, the Police Officer's Labor Council Field Representative for the Melvindale Police

Supervisors' Association. **X**, Welch Aff. ¶ 23; **AB**, Kulesza Aff. ¶ 5; **A**, Jones Dep. 43:12-44:6; **B**, Kennaley Dep. 76:12-77:15.

Coogan told Kulesza that Plaintiff lied during his deposition. Coogan explained that he originally thought Plaintiff's testimony would be favorable to the City, but was upset to find that the opposite was true. **AB**,  Kulesza Aff. ¶ 6, 8.  In a brazen effort to intimidate Plaintiff, Jones, and Kennaley, Coogan recounted that the PSC was contemplating bringing disciplinary charges against Plaintiff for his unfavorable federal court testimony. **X**, Welch Aff. ¶ 24-25; **AB**, Kulesza Aff. ¶ 7-9. Coogan attempted to telegraph a message to Plaintiff, Jones, and Kennaley—if they dared to testify unfavorably for the City, they would be harshly penalized. **X**, Welch Aff. ¶ 27; **AB**, Kulesza Aff. ¶ 10; **B**, Kennaley Dep. 172:8-16.

Prior to their April 10, 2018 meeting, Coogan provided the PSC copies of Plaintiff's deposition transcript, and advised them that the PSC should bring disciplinary charges against Plaintiff for his federal court testimony, up to and including his termination. **AC**, April 10, 2018 PSC Meeting 34: 8-14; 35:7-14; **C**, Bolton Dep. 171:10-172:11; 173:1-4; **Z**, Coogan Dep. 70:10-72:24.

During the April 10, 2018 meeting, Coogan reiterated this false information and advice. **AC**, April 10, 2018 PSC Meeting 2:14-20. The PSC was adamant that Plaintiff receive discipline, and decided to draft a complaint for disciplinary action

against him, and set a date for his trial board hearing at their next meeting, on May 8, 2018. *Id.* 34: 20-35:3, 17-20; 36:24-37:12-16; 38:4-8, 24-25; 39:1-25.

Jones, also a witness in the Hayse case, was present at the April 10, 2018 PSC meeting. **X**, Welch Aff. ¶ 25. Jones privately telephoned Plaintiff on April 11, 2018, and told Plaintiff that he feared Coogan and the PSC would "come after" him next. *Id.* ¶ 27.

At his May 14, 2018 deposition, Bolton knowingly and falsely testified that "no action had been taken" by the PSC against Plaintiff at the May 8, 2018 meeting, and that McIsaac was merely "thinking about submitting charges" against Plaintiff. **C**, Bolton Dep. 190:23-191:3. To the contrary, on May 15, 2018, the PSC advised Plaintiff that on May 8, 2018 it publically and officially resolved to draft disciplinary charges against him and set a date for his trial board. **AD**, May 2018 PSC Letter. Again, Defendants failed to provide Plaintiff any indication of what "lie" he allegedly told under oath at his March 28, 2018 deposition. The PSC's resolution merely states:

> "Moved by McIsaac, and supported by McDaniel, to set a trial board date and draft a complaint against Lt. Michael Welch regarding his truthfulness and voracity during his testimony in front of the Public Safety Commission in closed session and compare it to his testimony during his recent deposition in the Chad Hayse lawsuit against the City." *See id.*

Plaintiff is currently in an inactive duty status. **X**, Welch Aff. ¶ 16.  It is undisputed that the Melvindale Police Department has already filled Plaintiff's

14

former position. A suspension or termination by the PSC would result in Plaintiff failing to achieve the proper time in grade necessary under his retirement benefits package to qualify for early retirement. As a result, he would lose a significant portion of his retirement benefits, and be forced to wait over nine years to begin receiving any retirement benefits whatsoever. *Id.* ¶ 11; **AE**, Estimate of Benefits.

## III.   STANDARD OF REVIEW

In ruling on a motion for a preliminary injunction, a district court in this Circuit must consider and balance whether:

1.   the movant has a strong likelihood of success on the merits;
2.   the movant would suffer irreparable injury without the injunction;
3.   issuance of the injunction would cause substantial harm to others; and
4.   the public interest would be served by issuance of the injunction.

*R.L. Polk & Co. v. Infousa, Inc.*, 230 F. Supp. 2d 780, 783 (E.D. Mich. 2002) (citing *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).

The courts in this Circuit have readily granted preliminary relief to individuals retaliated against in the terms, conditions, and privileges of their employment, see, for example, *Equal Employment Opportunity Comm'n v. Credit Consultants, Inc.*, 532 F. Supp. 11, 13 (N.D. Ohio 1981) (injunctive relief  granted preventing defendant and its officers from interfering in any way with any former

or present employees who assist the plaintiff EEOC in its investigation of plaintiff's charges); *see also Conn v. Bd. of Educ. of City of Detroit*, 586 F. Supp. 2d 852, 866 (E.D. Mich. 2008) (granting injunctive relief reinstating teachers terminated due to First Amendment retaliation); *see also Memphis Police Ass'n v. City of Memphis*, No. 08-2124, 2008 WL 11411356, at *8 (W.D. Tenn. Mar. 11, 2008) (granting injunctive relief prohibiting retaliation against police lieutenant or police officers union). In the instant case, Plaintiff has made the required showings and is entitled to preliminary injunctive relief.

### A.   Any Factual Issues in Dispute Should Be Resolved in an Evidentiary Hearing

Insofar as the Court deems that any factual issues pertinent to resolving Plaintiff's Motion are in dispute, the Court should hold an evidentiary hearing. When a court considers a motion for a preliminary injunction, and "questions of fact [are] in dispute, an evidentiary hearing [is] required." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d at 535, 553 (6th Cir. 2007) (holding that the district court did not err in not holding an evidentiary hearing because there were no material facts in dispute).  According to the Sixth Circuit, "[w]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held." *Id.*; *see also Detroit & Toledo Shore Line R.R. Co. v. Bhd. of Locomotive Firemen & Enginemen*, 357 F.2d 152, 153–54 (6th Cir. 1966) (because there was a

16

controversy over the facts, an evidentiary hearing should have been held before issuing a preliminary injunction).

Plaintiff is entitled to a presumption of truth based on the unrebutted evidence he submitted. *Matthews v. Ishee*, 486 F.3d 883, 893 (6th Cir. 2007); *Kerwin v. Paul Revere Life Ins. Co.*, 6 Fed. App'x 233, 240 (6th Cir. 2001) (explaining that if one party puts forth "unrebutted testimony," the burden rests with the other party to "set forth evidence that create[s] a genuine issue of material fact"). Nonetheless, if the Court determines that additional evidence may be dispositive for its ruling, an evidentiary hearing should be held. *Cf. Pacheco v. Waldrop*, No. 5:13-cv-00044, 2013 WL 2581016, at *6 (W.D. Ky. June 11, 2013) (concluding that a hearing was not necessary to adjudicate the preliminary injunction motion because the parties were in agreement that no additional evidence needed to be produced for the court to render its decision). Given the substantial constitutional and statutory rights at stake, Plaintiff respectfully requests the Court to permit him to make a full factual record for the factual matters that remain in dispute.

### B.   Plaintiff Has a Strong Likelihood of Success on the Merits

Plaintiff has alleged two causes of action in this case, and for the purposes of this Motion and its accompanying Brief, relies on the likelihood of success of his claim of First Amendment Retaliation brought under 42 U.S.C. § 1983

1. Count I, Defendants Retaliated Against Plaintiff's Exercise of His First Amendment Rights When They Publically Stated that Plaintiff Perjured Himself; Suspended Him for 30 Days; and Again Threatened to Suspend, Demote, and/or Terminate His Employment. *See* Dkt. # 1.

Section 1983 creates a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To state a prime facie case under § 1983, a plaintiff must allege that (1) the action occurred "under color of law," and that (2) the action was a deprivation of a constitutional right or a federal statutory right. Plaintiff has sufficiently alleged that Defendants acted under color of law, and Plaintiff's causes of action are for deprivations of his constitutional rights. *See* Dkt. # 1.

### 1.    Count 1—Defendants Retaliated Against Plaintiff's Exercise of His First Amendment Rights When They Publically Stated that Plaintiff Perjured Himself; Suspended Him for 30 Days; and Threatened to Suspend, Demote, and/or Terminate His Employment Based on His Testimony in a Federal Civil Lawsuit

To prevail on his claim for First Amendment Retaliation, Plaintiff must show that he (1) engaged in protected conduct; (2) suffered an adverse action "that would deter a person of ordinary firmness from continuing to engage in the conduct"; and (3) "there is a causal connection between elements one and two— that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." The adverse employment action should be motivated in part by the plaintiff's constitutionally protected activity. *Conn v. Bd. of Educ. of City of*

*Detroit*, 586 F. Supp. 2d 852, 859 (E.D. Mich. 2008); *see also Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc); *see also Sowards v. Loudon County, Tenn.,* 203 F.3d 426, 431 (6th Cir.2000). If Plaintiff meets his initial burden, the burden then shifts to Defendants to show by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. *Id.* (citing *Kreuzer v. Brown,* 128 F.3d 359, 363 (6th Cir.1997); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

### a.    Plaintiff Engaged in Protected Conduct

The question of whether Plaintiff engaged in protected conduct is a question of law. *Conn,* 586 F. Supp. 2d at 859; *Leary v. Daeschner,* 228 F.3d 729, 737 (6th Cir.2000). It is well settled that the type of activities Plaintiff engaged in—testifying under subpoena in a public disciplinary proceeding and a federal civil lawsuit—are within the bounds of protected conduct set forth under the line of cases established by *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Conn v. Bd. of Educ. of City of Detroit*, 586 F. Supp. 2d 852, 859 (E.D. Mich. 2008). A public employee's sworn testimony outside the scope of his ordinary job duties is protected First Amendment speech, even when his testimony relates to his public employment or concerns information learned during that employment. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014).

It is undisputed that Plaintiff's ordinary job duties did not require him to testify at the August 2016 termination proceeding, or at Plaintiff's March 28, 2018 deposition. In fact, Plaintiff was under subpoena in both instances. Furthermore, the Court held in *Lane* that sworn testimony in judicial proceedings is a quintessential example of speech as a citizen because a sworn witness bears an obligation to the court and society at large to be truthful that is independent of any duties they owe their employer in connection with giving that testimony. *Lane*, 134 S. Ct. at 2379 (2014).

Furthermore, the content of Plaintiff's testimony on both occasions—regarding the unlawful behaviors of a Melvindale police officer and other City officials—is obviously a matter of significant public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 425 (2006) (holding that "exposing governmental inefficiency and misconduct" is a matter of considerable public significance"); *see also Lane*, 134 S. Ct. at 2380.

As in *Lane*, Defendants' side of the *Pickering* scale is empty. Defendants have no government interest that tips the balance in their favor. Defendants have no interest in punishing Plaintiff for giving false testimony because there is absolutely no evidence that Plaintiff's testimony in August 2016 or March 2018 was false. All the evidence points to the fact that Plaintiff's testimony was truthful. Plaintiff testified in August 2016 that he heard Hayse make negative comments

about the Mayor and Goch in private conversation with himself. **T**, Aug. 29, 2016 Proceeding 145: 5-17. It is undisputed that the only evidence of what transpired during the trial board are the memories and subjective opinions of the attendees, many of whom have a direct interest in silencing Plaintiff. **Y**, Defs. Resp. to Pl. 2nd Set of Discovery in Hayse v. City of Melvindale, et. al. at 18; Z, Coogan Dep. at 99:11-100:5; **C**, Bolton Dep. at 181:23-182:8. Plaintiff's September 2016 written statement reiterated that Hayse had on occasion said negative things about the Mayor and Goch in private conversations with Plaintiff. **V**, Welch Statement. Plaintiff never "recanted" his testimony (as Defendants like to say without any basis in fact) or admitted to lying under oath. **R**, Welch Dep. 146:24-147:6.

Defendants' only interest in threatening and disciplining Plaintiff is in foreclosing further damaging federal court testimony from him. If Defendants terminate employees for providing unfavorable testimony under the guise of ferreting out "perjury", they are violating the laws prohibiting witness retaliation while usurping the role of the courts in administering justice. There are judicial procedures—such as asking the Court to hold a witness in contempt or the filing of criminal charges—to hold perjurers accountable. However, Defendants chose to act as a law unto themselves in disciplining Plaintiff for "perjury" and publically proclaiming him a "perjurer" when no court in this land has deemed these

allegations to be true. There is no government interest which sanctions this conduct.

Furthermore, under prevailing case law, the topic of the speech—not its veracity—determines whether a public employee is entitled to First Amendment protection. While First Amendment protection might not be available if the employer can show that the public employee knowingly or recklessly made false statements, a public employee is not required to prove the truth of his or her speech in order to secure the protections of the First Amendment. *Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 851 (E.D. Mich. 2015), aff'd, 655 F. App'x 495 (6th Cir. 2016). Plaintiff's speech was clearly protected by the First Amendment, and Defendant has no viable interest in silencing that speech.

### b.    Plaintiff Suffered A Sufficiently Adverse Action

Defendants' actions would clearly deter a person of ordinary firmness from continuing to engage in the conduct. Since there is no justification for harassing individuals who exercise their constitutional rights, any resultant impact on free speech need not be great in order to be actionable. *Thaddeus–X v. Blatter*, 175 F.3d 378, 397 (6th Cir.1999). A plaintiff "need not show [that she was] actually deterred from exercising [her] right to free speech." *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir.2007). Accordingly, a credible

22

threat to the nature and existence of ongoing employment is of a similar character to the other recognized forms of adverse action, such as termination or refusal to hire. *Fritz v. Charter Twp.*, 592 F.3d 718, 724, 728 (6th Cir.2010); *see also Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 853 (E.D. Mich. 2015), aff'd, 655 F. App'x 495 (6th Cir. 2016).

In *Ely,* this Court found that two letters of reprimand, one warning plaintiff that she could be fired if she continued to make false statements, were sufficiently adverse actions for the purposes of stating a First Amendment Retaliation claim. *See Ely*, 150 F. Supp. 3d at 853. Defendants in this case went much further. They publically denounced Plaintiff as a perjurer in their September 13, 2016 and May 8, 2018 resolutions and at the April 10, 2018 public meeting of the PSC. **W**, Sept. 13, 2016 PSC Minutes at 3; **AD**, May 2018 PSC Letter. These actions destroyed the reputation for honor and efficacy Plaintiff created over the last 20 years, and with it his standing in the community and hopes for future employment in law enforcement. Furthermore, Defendants suspended Plaintiff for 30 days without pay in September 2016 and have again resolved to take serious disciplinary action against him, up to and including his termination, which will decimate his retirement benefits.  It is well settled that disciplinary actions of this nature are sufficient to meet the standard for adverse consequences. *Conn*, 586 F. Supp. 2d at 861; *see also Pickering*, 391 U.S. at 574-5.

      **c.**    **Defendants' Adverse Actions Were Motivated by his Protected Conduct and Would Not Have Been the Same Absent Plaintiff's Protected Conduct**

The record of Defendants' actions proclaim the undisputed facts that (1) their adverse actions against Plaintiff were motivated by his protected conduct; and that (2) Defendants' actions would not have been the same absent Plaintiff's protected conduct. Defendants publically called Plaintiff a perjurer, suspended him, and moved to further discipline him in September 2016, and April and May 2018 because of the testimony he gave under oath at the August 2016 disciplinary proceeding and March 2018 deposition. If Plaintiff had not given this testimony, or the substance of his testimony was different, Defendants would not have taken any such action against him.

Defendants publically stated that they took action against Plaintiff because of the testimony he gave in September 2016 and March 2018. Defendants' September 2016 Complaint stated that Plaintiff was being disciplined for, "lying to Mayor and City Council at a public hearing on 8/29/2016. **U**, Sept. 2016 Complaint Against Plaintiff. The PSC's resolution to discipline Plaintiff referenced the fact that he was required to provide "truthful testimony" in the future—i.e. that his August 2016 testimony was untruthful. **W**, Sept. 13, 2016 PSC Minutes at 3. During the April 10, 2018 PSC meeting, Defendants were adamant that Plaintiff's September 2016 and March 2018 testimonies were inconsistent, and that

disciplinary action should result. **AC**, April 10, 2018 PSC Meeting 2:14-20;  3:1-9; 3:23-25; 5:5-24; 6:11-14; 6:19-25; 7:1-14. Finally, on May 8, 2018, the PSC publically resolved to, "set a trial board date and draft a complaint against Lt. Michael Welch regarding his truthfulness and voracity during his testimony in front of the Public Safety Commission in closed session and compare it to his testimony during his recent deposition in the Chad Hayse lawsuit against the City." **AD**, May 2018 PSC Letter. If Plaintiff had not testified, or if the substance of his testimony had aligned with Defendants' version of the events that transpired in the Melvindale Police Department between 2015-2016, he would not have been publically denounced as a perjurer, suspended, and threatened with more discipline.

### C.     Plaintiff, Witnesses, and the Court Will Suffer Irreparable Harm without Injunctive Relief

It is well settled that when a constitutional right is being threatened or impaired, the Court <u>must</u> find that Plaintiff will suffer irreparable injury.  *Bonnel v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001); *see also, e.g.*, *Hillside Prods. Inc. v. Duchane*, 249 F. Supp. 2d 880, 900 (E.D. Mich. 2003) (where a plaintiff's procedural due process rights were likely violated, a finding of irreparable harm should follow as a matter of law); *see also Conn*, 586 F. Supp. 2d at 865 (holding that the loss of Constitutional rights, even for minimal periods, unquestionably constitutes irreparable injury).

Furthermore, because of Defendants' actions, Plaintiff stands to lose the well-deserved and incalculable rewards of his life's work—his good name and standing in his community, as well as hundreds of thousands of dollars in pay and retirement benefits, which are not easily calculated. Without injunctive relief against further retaliation from the PSC, Plaintiff's good name, reputation and his future career prospects in law enforcement will be completely ruined. It is well settled that such damage to good will and reputation constitutes irreparable injury. *JD Norman Indus., Inc. v. Metaldyne, LLC*, 2016 WL 1637561, at *7 (E.D. Mich. Apr. 26, 2016); *see also AFT Michigan v. State of Mich.*, No. CIV. 06-10612, 2006 WL 335712, at *2 (E.D. Mich. Feb. 14, 2006) (granting injunctive relief where inclusion of the name of an innocent person on a list of felons would result in injury to reputation and possible discharge of employment).

Absent such intervention, Defendants may use intimidation tactics to stifle Constitutional litigation to the detriment of the public and justice system, broadly. In *L'Orange v. Medical Protective Co.*, the Sixth Circuit held that a breach of contract occurred when a malpractice insurer cancelled a dentist's malpractice policy for the purpose of coercing and intimidating the dentist, who was a witness in a pending malpractice lawsuit. *L'Orange v. Med. Protective Co.*, 394 F.2d 57, 63 (6th Cir. 1968). The Court found that, "the virtual necessity of expert testimony in malpractice cases," and the "recognized reluctance" of doctors to give such

26

testimony created a compelling public policy interest against intimidating such witnesses.

There is a direct parallel between the testimony at stake in *L'Orange* and the testimony at issue here—Plaintiff's testimony and that of his fellow police officers is vital to the just adjudication of his own federal civil litigation, and that of the Hayse case. These individuals have irreplaceable first-hand knowledge of the facts in these two cases. Furthermore, it is well known that a "blue wall of silence" exists within the ranks of police units in the United States; police officers are notoriously reluctant to testify regarding errors and misconduct that arise during the course of their official duties. Accordingly, in *L'Orange*, the Court found that absent its intervention, grave harm would result to the justice system from the insurance industry using cancellation procedures to stifle malpractice litigation. *L'Orange*, 394 F.2d at 62. Similarly, absent intervention by the Court, Defendants will be able to use threatened and actual fraudulent disciplinary actions to stifle their own internal investigations and disciplinary processes as well as federal Constitutional litigation designed to redress their unlawful behavior.

Injunctive relief is also necessary to protect the Court's adjudicative processes and to guard against any further retaliation that might impede the Court's and the jury's adjudication of Plaintiff's claims. In *Federoff v. Walden*, 1978 WL 34, at *6 (S.D. Ohio Mar. 24, 1978) the court held that the retaliatory termination

27

of an employee who supported a plaintiff's claims of discriminatory employment practices constituted irreparable harm. The court pronounced,

> "As with most retaliatory activity, the harm threatened here is irreparable. Independently of the threat to Clymer's employment future, there is irreparable damage done to the administrative process if other employees feel that their positions are in jeopardy if they cooperate with agency investigators." *Federoff*, 1978 WL 34, at *6.

Similarly, there is irreparable damage done to the federal civil litigation process if Defendants' may jeopardize their employees' jobs, reputations, and future livelihoods with impunity, if they don't like their testimony. As evidenced by the aforementioned testimony of Bolton, Coogan, Kennaley, and Plaintiff, and the PSC's May 8, 2018 Resolution No. 18.05.07, there is compelling evidence that Defendants' employees fear retaliation and were retaliated against for their participation in formal disciplinary proceedings and federal civil litigation. **C,** Bolton Dep. 171:10-172:11; 173:1-4; **Z,** Coogan Dep. 70:10-72:24; **B** Kennaley Dep. 172:1-173:2.; **AD,** May 2018 PSC Letter.

### D.    The Balance of Harm Decidedly Favors Plaintiff

If the Court grants the relief requested, there is no conceivable way that Defendants or any other individual will be harmed. The fact that Plaintiff's truthful testimony inculpated Defendants in wrongdoing does not give them the right to retaliate against him by destroying his reputation, financial wellbeing, and future career prospects. Plaintiff is not even on the job at this time, nor will he return to

work, further demonstrating that the relief requested will not harm Defendants or any other individual or cause them to give up any right or entitlement. The injunctive relief sought would have the simple effect of allowing Plaintiff, an inactive employee, to remain in a non-duty status without loss to his retirement benefits or reputation, and ensure that Defendants' current and former employees can testify truthfully without loss of benefits or reputation. *See Conn*, 586 F. Supp. 2d at 866.

### E.      Granting the Requested Injunctive Relief Would Serve the Public Interest

The determination of where the public interest lies depends on a determination of the likelihood of success on the merits of the party's constitutional challenge because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). The public interest almost always favors the applicant for injunctive relief if the applicant demonstrates both a likelihood of success on the merits and irreparable injury. *AT&T Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1427, n.8 (3d Cir. 1994). It is also well settled that threatening, intimidating, and retaliating against witnesses is detrimental to the public interest. *L'Orange v. Med. Protective Co.*, 394 F.2d 57, 63 (6th Cir. 1968).

In this case, Plaintiff has demonstrated a strong likelihood of success on the merits. As articulated above, there is copious, undisputed evidence that Defendants intentionally drafted factually false disciplinary allegations against Plaintiff to retaliate against him. Plaintiff has shown that he, the witnesses, and the Court will suffer immediate, irreparable harm,  **as early as June 12, 2018,** if the requested injunctive relief is not granted. Moreover, because it is always in the public interest to prevent retaliation and intimidation of federal witnesses and a violation of constitutional rights, the public interest would be served by granting the relief Plaintiff seeks in this case.  *Connection Distrib. Co.*, 154 F.3d at 288.

## IV.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court enter a Preliminary and Permanent Injunction enjoining Defendants from any further acts of intimidation and retaliation against him, specifically, disciplining and/or terminating him, because of his testimony as a witness in the federal civil litigation of Chad Hayse (United States District Court, Eastern District of Michigan, docket number 17-cv-13294), including any further action by Defendants to harm or penalize Plaintiff in the terms, benefits, and conditions of his employment with the City of Melvindale.

Dated: June 1, 2018                              **DEBORAH GORDON LAW**
                                                              /s/Deborah L. Gordon (P27058)
                                                              Elizabeth Marzotto Taylor (P82061)
                                                              Attorneys for Plaintiff

33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2018, I electronically filed with the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
ivaynerman@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com