# EXHIBIT N



# Melvindale Police Department
## Office of the Chief of Police
## Departmental Communication

TO:

FROM:   Chad L. Hayse

DATE:   April 25, 2016

RE:     Furman Investigation 2016-00695

You are being suspended for three days effective Wednesday (April 27, 2016) at 1600 hours. You will surrender your weapon and ID to the desk officer. You are not to take any police action while you are suspended. You may not work overtime on your days off scheduled for Friday April 29 or Saturday April 30. The schedule will show you suspended for Thursday April 28, Monday May 1st and Tuesday May 2nd.

Your explanation of the circumstances states that you gave a verbal warning about a license plate cover on the vehicle yet you were able to run the license plate prior to stopping the vehicle.

Lt Welch and other supervisors have advised you in the past about towing vehicles with sick, elderly or children in the vehicle. On February 28, 2016 you towed a vehicle after removing children from the vehicle. The driver was on her cell phone and you ordered her from the vehicle (several times) and then you forcible removed her by using a transport wrist lock and secured both of her wrists behind her back while forcing her over the hood of the vehicle. You placed the driver under arrest. You failed to report the arrest to your supervisor (Lt Welch). You did not process the prisoner, but instead released her with a citation for No Insurance. In my opinion, it was not necessary to remove the woman from the vehicle instead of allowing her to complete her telephone call.

You called for assistance when the driver would not exit the vehicle and Cpl Hinojosa responded/ Cpl Hinojosa transported the woman and the two children (10 months and 3 years) to the White Castle restaurant because she refused to get in your patrol car.

The driver came to the police station and complained to Lt Welch that you had assaulted her in front of her children. She stated that she did not want to remove the children from the vehicle because the traffic stop was conducted on Schaefer with two lanes of traffic. She stated that she was forced out of the vehicle onto the ground and then over the hood of the vehicle she was driving. She requested a complaint form.

## Conclusion:

People v. Gonzales, 356 Michigan 247 (1959) states that an arrest is the taking, seizing, or detaining of another person by either touching or putting hands on that person, or by any act that indicates an intention to take him or her into custody and subjects the person arrested to the actual control and will of the person making the arrest and must be so understood by the person arrested.

You arrested the driver and failed to follow the listed Rules and Regulations of the Melvindale Police Department as adopted by the Public Safety Commission and City Council:

Section 2. #4 Handcuffs the prisoner.
   #5. Search prisoner
   #6. Transport prisoner to police station

Section 5. Processing prisoner

Section 8. Detention of prisoner

Section 23: Professional conduct and responsibilities
   Standard of conduct. Unbecoming an officer or neglect of duty
   Insubordination. Failure or deliberate refusal of any member, or employee, to obey a lawful order given by a superior officer, shall be insubordination. Lt Welch spoke with you on several occasions about using discretion when towing vehicles with children in the vehicle.

Section 31 of the Rules and Regulations

   Whenever it is deemed necessary for the preservation of good order, efficiency, and discipline of the department a ranking member may suspend from duty any subordinate member of employee of the department.



Melvindale Police Department
Inter-Departmental Communication

TO: Chief Hayse
FROM: Lt Welch
DATE : 3-3-16
SUBJECT:  Incident 2106-00695

On 2-28-16 I was working the front desk. I heard Cpl Furman request another car at his traffic stop at Schaefer/I-75. In the background, I could hear a woman screaming. Cpl Hinojosa responded from the station. While Hinojosa was enroute, Furman advised that he could either slow it down, or disregard the back up.
Furman requested a tow truck and cleared the stop. Cpl Hinojosa transported the vehicle occupants to White Castle.

A short time later, Wielichowski, Cecelia and another unknown female came into the station. Wielichowski was highly upset, stating that one of our officers assaulted her in front of her children.
Wielichowski stated that she had been pulled over by Cpl Furman on Schaefer. That he told her that he was going to tow her vehicle for not having insurance. She told him that she did not want to take her small children out of the car in traffic. She stated she advised him that she had a ride coming that would be there shortly. She states Furman demanded that she exit the vehicle immediately.
Wielichowski stated that Furman grabbed her by the arm and dragged her out of the car and onto the ground. That he then proceeded to force her over the hood of the car.
Wielichowski stated that Furman was wrong for what he did to her in front of her children.
She stated to the female with her that her arm hurt, and that she would be going to the hospital to have it looked at. She also stated she would be consulting an attorney. Cpl Hinojosa returned her baby seat to her in the police lobby.

I provided Wielichowski with an officer complaint form. I have not yet received a written complaint from her.

CONFIDENTIAL
1-30-2018
Defendants' Response to 1st Request to Produce
001452

I spoke to Furman in regards to the incident. He states that he told Wielichowski that he was towing her vehicle. That she did advise him that she had a ride coming. That he told her that she could wait in the car until the tow truck arrived. Furman stated that Wielichowski was yelling and swearing at him. When the tow truck came, he told her to get out of the car and that she refused. He states that he put her in an arm bar and removed her from the vehicle.

I asked Furman why, if he saw the need to go hands on with a subject and use physical force, that person was not placed under arrest. He had no explanation for his actions.

I asked him why it was so important to tow the vehicle and put small children out on the street. I asked if there was any other way the situation could have been handled. He had no reasoning for his actions, other than he decided to tow the car.

I have spoken to Cpl Furman repeatedly over using discretion and it appears to fall on deaf ears. Other supervisors and officers tell me they have talked to him to no avail.

Recently, I had an elderly female come to the desk to get her vehicle out of the impound. The vehicle had been towed by Furman for no insurance. When she found out the amount, she broke down crying at the desk. She stated she had to wait until her social security check had come before she could get her car out. She states that SS was her only source of income. She was several dollars short of being able to get the car out and had nothing left for the month to live on. I gave her the rest of the money out of my pocket so she could get her car.
When I spoke to Furman about his decision making in this matter he seemed unconcerned, making a comment about "she should have had insurance".

There is a serious problem here with the lack of discretion and common sense. I believe my efforts to coach and counsel Furman on his behavior are largely ignored.
I feel that while he is working, I cannot trust him to do the right thing. Every encounter with a citizen has a different set of circumstances, and many options for an officer to take. Furman seems to only take the path that suits him.

LT *[signature]*

CONFIDENTIAL
1-30-2018
Defendants' Response to 1st Request to Produce
001453