# EXHIBIT Q

**Melvindale Police Department**
**Witness Statement**

Full Name: Richard Crosslin    Complaint Number: _____

Address: 18859 Henry    Date: 07/4/2016  Time: _____

Melvindale, Mi. 48122    Telephone Number: 313-820-3761

Date of Birth: 12/13/1979    Drivers License Number: C624 738275947

My sister and I were in the basement arguing because she was trying to take my kids because she felt they should be with their mother. I punched a crib and a metal shelf which knocked the lid off a partial collection of swords I had stored inside. I saw they were not how I left them so I started going through them feeling for nicks or gouges then I got to my USMC sword and felt that it was loose so as she took my kids away from me I took it into my room where I had more light to see. I was knelt down next to it feeling the blade and checking what was loose while looking to see what else Melvin Crosslin and Michael Crosslin broke into my room and stole from me. When she came back down she saw from a slight angle and thought I was holding the sword to my throat. I came upstairs to have a gun pointed in my face and my sister right behind me. The officers told me to put my hands on my head, turn around and get on my knees. I told them I can't lift my right arm all the way due to nerve damage and I struggled to get to my knees because I have had 3 (three) surgeries on my spine which I told them and before I got all the way down one of the officers came from the side and slammed me face first into a steel can of anti conditioner. I told them that and they were hurting my spine, neck, face and shoulder with the nerve damage and they told me to stop resisting. When someones body does not move certain ways without extreme pain it is not resisting and I DID notify them of my problems and the continued to force their arm across my face pressing it into the steel can and what felt like elbows right onto my spine. Its 3 days later and my face and spine still hurts. I want to press charges

Signature: Richard Cross___    Page 1 of 2

4/23/2018
Defendant's Response to 1st Request to Produce
006505

## Melvindale Police Department
## Witness Statement

Full Name: Richard Crosslin     Complaint Number: _____

Address: 18859 Henry     Date: _____   Time: _____

Melvindale Mi. 48122     Telephone Number: 313-820-3761

Date of Birth: 12/13/1979     Drivers License Number: C624 738 275 947

There was no reason for the officers to slam me to the floor after I stated I have screws and rods in my back and neck and nerve damage in my right shoulder and that it is painful to lift to fast or move certain ways. Once slammed to the floor I told the officers my face was being crushed into a steel can and they were hurting my arm moving it a way I can't move it and they told me to stop resisting which I was not doing followed by them pressing something even harder into my spine and my face and told me they don't care. The statement my sister gave about what happened in the basement was false. She saw what was in my hand and assumed something wrong and thought she saw something which was impossible for her to see since I was down on my knees with my back to the door so I had light to check for damage to my property. So whatever officers slammed me to the floor and crushed my neck, face and spine I would like charges pressed against them for excessive force and abuse of power. There is never any reason for someone who weighs about 100 lbs more than me knowing I have physical problems to slam me to the floor let alone 2 officers. That was close or over 500 lbs crushing my face, neck and spine. I still feel the pain in my face back and neck from what they did to me.

Signature: Richard Crosslin     Page 2 of 2

4/23/2018
Defendant's Response to 1st Request to Produce
006506

7/6/2016 IMG_0394.JPG





# Melvindale Police Department
# Departmental Communication

FROM: Lt. John Allen

TO: Chief Hayse

DATE: 07/06/2016

SUBJECT: Furman Investigation

Chief,

I have spoken with Richard Crosslin and Jacqueline Roberts, per your request.

Richard Crosslin: He complained about officers using excessive force during his detention on July 4th, while officers were at his home to police a call in regards to a male with a knife. I went to the hospital, along with Detective. Martinez, on the 5th of July and spoke with Mr. Crosslin.

Mr. Crosslin stated that he still wanted to file a complaint against the officers involved. I asked Mr. Crosslin to explain to me what happened. He stated that he was asked to come up stairs to where the officers were located. He complied with their orders and walked up the stairs to the kitchen/dining room area. There, he was ordered to kneel on the ground and to place his hands behind his back. He again stated that he complied and was trying to inform the officers that he has a medical issue with his back and that he would have a hard time putting his hands behind his head. While trying to explain this, he states that he was pushed to the ground, forcefully, and then had his head held down to the ground, until he was handcuffed behind his back. He states that he was taken to the ground so hard that his head/right side of his face area landed on a tin container, denting it. I explained to him that I was conducting an investigation and asked him what he would do if the investigation leads to wrong doing on the part of the officer. He stated

that he wants an apology and is not sure if he would follow up on criminal charges.

Mr. Crosslin was unable to write, due to his hand shaking too bad. So, I provided him with a witness statement and advised him to fill it out when he was able to write and to turn it into myself or you. I provided Mr. Crosslin with a business card and cleared.

I spoke with Mr. Crosslin's sister, Jacqueline Roberts, over the telephone. She informed me that she was not present in the room when her brother was taken down to the ground; however, she was witness to him coming up the stairs, going in the kitchen, and being compliant with their orders. She states that the officers ordered her back down the stairs when she followed her brother up the stairs to the kitchen area. She was able to hear the incident and heard her brother explaining to the officers that he had back surgery and not to hurt him. She then heard a loud thud and her brother screaming in pain and stating that his back was hurting him. She heard a cop telling her brother to stop resisting, to which her replied, I can't move it that way; however, he still complied and screamed in pain. At this point, she had already ran up the stairs and was informing the female officer about her brother's medical problems: that he had multiple back surgeries, has titanium rods & cages in his spine, and that he has nerve damage to his shoulder area.

I informed Mrs. Roberts that I would need her to fill out a written statement and she agreed to have me drop it off at her father's house. I dropped off the form and she turned it in later that night.



**Melvindale Police Department**
**Inter-Departmental Communication**

To: Lt. Welch
From: Ofc. Lane
Date: 07/4/2016
Subject: Report # 2016-01932

    Officers were dispatched to 18559 Henry Ave. at approximately 1330hrs for a fight in progress. Upon arrival, Officers were informed by a male who was inside the location, that his brother, Richard Crosslin, had his sister at knife point in the basement of the house. Myself, Officer Ginther and Corporal Furman made entry to the home and ordered Crosslin up the stairs and into the dining room/kitchen area of the home at gun point. We ordered Crosslin to put his hands behind his head and turn away from Officers, Crosslin complied. We ordered Crosslin down to his knees and he complied.

    When Crosslin complied and got down onto his knees, I tapped Cpl. Furman on the shoulder and told him to scoot over so Officer Ginther can make contact with Crosslin and handcuff him. I don't know if Cpl. Furman didn't hear me or there was miscommunication but Cpl. Furman holstered his weapon and tackled Crosslin forcing him to his stomach. Officer Ginther assisted Cpl. Furman in handcuffing Crosslin. While Furman was on top of Crosslin, Crosslin kept stating that he has had three back surgeries and can not do as Cpl. Furman was requesting because Cpl. Furman was on his back causing extreme pain. Meanwhile Cpl. Furman is still screaming and yelling at Crosslin telling him to stop resisting. Cpl. Furman and Officer Ginther were able to place Crosslin in handcuffs and had to assist him on getting up as he was in extreme pain stating he was assaulted.

While Cpl. Furman and Officer Ginther were attempting to handcuff Crosslin, his sister Jaqcueline Roberts was also yelling and screaming that that Crosslin has had three back surgeries and can not be pushed around or have anything/anyone on his back.

I was not able to see if Crosslin was actively resisting while he was on the ground. I do not feel it was necessary for Crosslin to be tackled the way he was and I feel it was excessive. Crosslin was completely cooperative throughout the whole process and followed all of our orders immediately. Crosslin stated several times that he will be filing a complaint and that he will pursue assault charges on Officers.

Officer Lane



# City of Melvindale Police Department
3100 Oakwood Boulevard · Melvindale, Michigan 48122
(313) 429.1070 · Fax (313) 382.6038
policechief@melvindale.org

**Chad Hayse**
**CHIEF OF POLICE**

To: Lt. Welch
From: Ofc. Ginther
Date: 07/04/2016
Subject: 2016-01932

Dear Lt. Welch,

On stated date I along with Ofc. Lane and Cpl. Furman were dispatched to a fight in progress at 18859 Henry. Upon arrival Officers observed a man ( later identified as Michael Crosslin) yelling "he has a knife to her throat." Officer made entry into the home. The subject Richard Crosslin was in the basement. Officers ordered Richard up the stairs at gun point and into the kitchen. Officers ordered Richard on his knees with his hands on his head. Richard was compliant during the process. I observed Cpl. Furman tackle Richard and I assisted in handcuffing (TC/DL) Richard. Richard was not me on his left side. Richards was yelling he is in pain and has had surgeries. His sister Jacqueline also stated the same thing. Richard claimed he hit his head on a tin can.

Officers helped Richard to his feet and walked him the front porch and let him sit in a chair. Richards was transported by DFD to Beaumont for Officers committal.

4/23/2018
Defendant's Response to 1st Request to Produce
006497

# NOTICE

## ASSERTION OF CONSTITUTIONAL RIGHTS

## COMPLIANCE WITH COMPELLED INFORMATION

I, **MATTHEW L. FURMAN**, hereby assert my 5th and 14th Amendment right under the United States Constitution and corresponding provisions of the Michigan Constitution, to remain silent regarding incident/case # **2016-01932**

In the event the Employer, through a superior officer, compels me to submit information (including, but not limited to: statements, reports, and answers to questions) under order and threat of adverse employment action (including, but not limited to: suspension and/or termination), I shall comply and submit the compelled information, subject to my assertion of the right and protection afforded me under *Garrity v New Jersey*, its progeny, Michigan statute, PA 563 of 2006, MCL 15.391, *et. seq.*, and the United States and Michigan Constitutions, notice of which shall be given, by my written declaration, prior to submitting the compelled information.

*Matthew L. Furman*

Officer/Deputy

"On [07-05-2016] (date) [1130 HRS] (time), at [MEPD] (place) I asserted the right to remain silent. I was thereafter ordered by [CHIEF HAYSE/LT. ALLEN] (superior officer, name & rank) to submit information (which includes a report, statement or answers to questions) as a condition of continued employment. In view of possible job forfeiture, I have no alternative but to abide by this order and to submit this compelled information. I rely specifically upon the protection afforded me under the doctrines set forth in <u>Garrity</u> v <u>New Jersey</u>, 385 US 493 (1967), <u>Gardner</u> v <u>Broderick</u>, 392 US 273 (1968), and their progeny, as well as PA 563 of 2006, MCL 15.391 <u>et seq</u>.

It is my belief and understanding that this information will not and can not be used against me by any governmental agency or related entity in any subsequent proceedings, other than disciplinary proceedings within the confines of the department itself. For any and all other purposes, I continue assertion of my constitutional right to remain silent under the FIFTH and FOURTEENTH AMENDMENT to the UNITED STATES CONSTITUTION and any other rights prescribed by Michigan laws.

This assertion of right applies to information (report/statement/answers to questions) in #[2016-01932].

[signature: Matthew L Furman]

| [MATTHEW L. FURMAN] | [07-05-2016] | [CPL KENNALLY] | [7-5-16] |
| Officer | Date | Witness | Date |



Melvindale Police Department
Inter-Departmental Communication

To:      Chief Hayse
From:    Cpl. Furman
Date:    07/05/2016
Subject: 2016-01932

It has come to my attention that Richard Crosslin has filed a complaint against me in regards to excessive force during the incident occurring on 07/04/2016. I strongly contend that absolutely no excessive force was used against Crosslin by me or any other officer at scene.

On 07/04/2016 at approximately 1315 hrs, Tonya Lynn Crosslin walked into MEPD. I was at the front desk and spoke with Tonya Crosslin, who advised that her soon to be ex-husband, RICHARD CROSSLIN, is staying at 18859 Henry Ave along with their 2 mutual children, of whom they share custody. She advised that CROSSLIN is staying at this location with his brother, Michael Crosslin, and other family members. Tonya Crosslin stated that Richard, both children, and a dog are sleeping in the same bed, and the conditions are unhealthy and unsanitary. Tonya Crosslin stated to me that CROSSLIN is violent and dangerous and has been physically fighting with his brother, and that the children are afraid of him and for their safety. Tonya Crosslin stated the children want to leave and be back at her house. While speaking with Tonya, she received a call from her son, and she stepped away from the front desk to speak with him. Tonya Crosslin then frantically approached the front desk and stated that her son just told her Richard Crosslin is fighting with family and police need to go the house immediately. Tonya Crosslin stated she could hear screaming and lots of noise in the background. Tonya put her phone on speaker phone and faced it toward the window and I could hear a commotion and shouting.

I advised Lt. Welch, Ofc. Lane, and Ofc. Ginther of same. I, along with Ofc. Lane and Ofc. Ginther, left the MEPD parking lot at the same time in fully marked patrol cars and went lights and sirens to 18859 Henry Ave. We arrived on scene at the same time. As I was driving south on Henry Ave toward the address, I observed 2 children on the front porch of the home. I observed a white male, later identified as Michael Crosslin, frantically run out the front door of the house and down the porch steps and onto the sidewalk. Michael Crosslin flagged down Officers, and repeatedly shouted "he has a knife to her throat". I, along with Ofc. Ginther and Ofc. Lane, ran toward the house. At this time I could hear numerous hysterical female screams coming from the house. I drew my department issued firearm and entered the home. At this time, I observed an older white male in the living room, making his way toward the front door of the home. This male advised me that CROSSLIN is in the basement and has a knife. I made sure the man exited the home and then proceeded to walk into the kitchen and shout CROSSLIN's name. I continued to hear a female screaming and then the screaming stopped. After a short time, a white male (CROSSLIN) appeared at the top of the stairs. At this time, I was standing in the doorway to the kitchen, as the kitchen was small and to enter any further would have placed me almost within arm's reach of CROSSLIN.

CROSSLIN was fully dressed and I was unable to see if he was hiding a knife or any other weapons on his person.

Upon seeing CROSSLIN, I ordered him to stop walking and place his hands on his head. After being ordered several more times, CROSSLIN complied. I then ordered CROSSLIN to slowly turn around, which he did. I then ordered CROSSLIN to lower himself to his knees. At this time, I felt Ofc. Lane tap me on the shoulder. I stepped to the right. I knew Ofc. Lane to have her firearm drawn, and proceeded to holster my firearm. I observed Ofc. Ginther quickly enter the room and force CROSSLIN's upper body to the floor. I immediately assisted Ofc. Ginther, and CROSSLIN began shouting and move his arms and body around, making it difficult to gain control of him and handcuff him. I placed my body weight on CROSSLIN and held his head flat to the floor with my left arm. At this time, I felt CROSSLIN'S right arm and hand moving and it struck my legs several times. Holding CROSSLIN'S head to the floor kept

his upper body from rising and reduced his struggle. It took a good 20-30 seconds for Ofc. Ginther to handcuff CROSSLIN. Once he was secure, I immediately removed my arm from his head and my body weight from his body, and stood by as Ofc. Ginther searched CROSSLIN.

CROSSLIN then stated that he has a bad back and has had back surgery in the past. CROSSLIN stated he is going to sue the police department. I, along with Ofc. Ginther, explained to CROSSLIN that officers had used necessary force to secure the situation and make sure everyone was safe. We then asked CROSSLIN if he would prefer to sit or stand. CROSSLIN stated he would like to stand. We assisted CROSSLIN in standing up, and walked him to the front porch, where CROSSLIN advised he would prefer to sit on the porch swing. CROSSLIN was allowed to smoke 4 cigarettes.

I left the scene for approximately 15 minutes, as I was dispatched to a fireworks complaint and an alarm call. I then returned to scene. I spoke with CROSSLIN's sister, Jacqueline Yvonne Roberts, who stated to me that CROSSLIN is addicted to numerous pills and pain medications and often acts irrational and violent. Roberts stated that while in the basement, CROSSLIN had broke a crib, punched a file cabinet, and had began digging through a box of swords, feeling the blades with his fingers to determine which was the sharpest. Roberts stated that CROSSLIN told her to take his kids upstairs because he doesn't want them to see him end it. Roberts rushed the kids upstairs and then returned to where CROSSLIN was, and found him kneeling on the floor, with a sword pushing against his throat.

At no point did I strike, punch, kick, choke, taser, pepper spray, or shoot CROSSLIN. At no point did I use any excessive or unnecessary force. At all times, I placed a priority on the safety of police officers and family members. I treated this situation with relevance to all information provided by family members, all observations I had made on scene, and frantic and credible statements made by Michael Crosslin that CROSSLIN was holding a knife to a female's throat in the basement, female screams, Tonya Crosslin's statement that CROSSLIN is prone to violence and physical fighting. Under these circumstances, it had to be assumed that CROSSLIN had a knife on him and is prone to violent behavior. I used necessary force to

protect all persons present and secure and search CROSSLIN. As soon as CROSSLIN was handcuffed and searched, all physical control ended immediately. No excessive force was used.

4/23/2018
Defendant's Response to 1st Request to Produce
006503



# Melvindale Police Department
## Office of the Chief of Police
## Departmental Communication

TO:     All Officers

FROM:   Chad L. Hayse

DATE:   July 5, 2016

RE:     Cpl Furman

Effective today, Cpl Furman is suspended (with pay) until further notice.

4/23/2018
Defendant's Response to 1st Request to Produce
006453