UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL WELCH,**

    Plaintiff,

vs.

**CITY OF MELVINDALE,** *a political Subdivision of the State*; **MELVINDALE PUBLIC SAFETY COMMISSION,** *a political advisory body of the City of Melvindale*; **JEFFERY BOLTON, KEVIN MCISAAC, MARTHA MCDANIEL, PATRICIA HALL, JOSEPH ALVARADO,** *and* **LAWRENCE COOGAN,** *individuals, sued in their official and personal capacities,*

    Defendants.

Case No:  18-cv-11450
Hon. Laurie J. Michelson
Mag. Mona K. Majzoub

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/Fax (248) 258-7881
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

**PLUNKETT COONEY**
Audrey J. Forbush (P41744)
Attorney for Defendants, City of Melvindale, Melvindale Public Safety Comm., Bolton, McIsaac, McDaniel, Hall & Alvarado
Plaza One Financial Center
111 E. Court Street- Suite 1B
Flint, Michigan 48502
(810) 342-7014/Fax (810) 232-3159
aforbush@plunkettcooney.com

**JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C.**
Carlito H. Young (P61863)
Laura B. Brown (P79742)
Attorneys for Lawrence Coogan, Only
27555 Executive Drive, Suite 250
Farmington Hills, Michigan 48331

(248) 489-4100/Fax (248) 489-1726
cyoung@jrsjlaw.com
lbrown@jrsjlaw.com

_____

## CORRECTED AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**There is a companion case that has previously been filed in the United States District Court, Eastern District of Michigan, where is was given docket number 17-cv-13294 and is assigned to Linda V. Parker.**

Plaintiff Michael Welch, by his attorneys Deborah Gordon Law, complains against Defendants City of Melvindale, Melvindale Public Safety Commission, Jeffrey Bolton, Kevin McIsaac, Martha McDaniel, Patricia Hall, Joseph Alvarado, and Lawrence Coogan as follows:

### Jurisdiction and Parties

1.     This is an action by Plaintiff Michael Welch against Defendants City of Melvindale, Melvindale Public Safety Commission, Jeffrey Bolton, Kevin McIsaac, Martha McDaniel, Patricia Hall, Joseph Alvarado, and Lawrence Coogan for retaliating against Plaintiff for exercising his Constitutional rights, conspiring to intimidate and retaliate against Plaintiff because of his testimony in a federal civil lawsuit in violation of federal law, and for defamation and tortious interference with a contract or advantageous business expectancy.

2

2.     This Court has federal subject matter jurisdiction pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 28 U.S.C. § 1343, 28 U.S.C. § 1331, and 28 USC § 1367.

3.     Plaintiff Michael Welch ("Plaintiff") is a resident of Michigan and resides in the Eastern District of Michigan.

4.     Defendant City of Melvindale ("City") is a political subdivision of the State of Michigan.

5.     Defendant Melvindale Public Safety Commission ("Public Safety Commission") is a political advisory body of the City of Melvindale.

6.     Defendant Jeffrey Bolton ("Defendant Bolton") is an individual who at all pertinent times served on the Melvindale Public Safety Commission and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

7.     Defendant Kevin McIsaac ("Defendant McIsaac") is an individual who at all pertinent times served on the Melvindale Public Safety Commission and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

8.     Defendant Martha McDaniel ("Defendant McDaniel") is an individual who at all pertinent times served on the Melvindale Public Safety Commission and,

upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

9. Defendant Patricia Hall ("Defendant Hall") is an individual who at all pertinent times served on the Melvindale Public Safety Commission and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

10. Defendant Joseph Alvarado ("Defendant Alvarado") is an individual who at all pertinent times served on the Melvindale Public Safety Commission and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

11. Defendant Lawrence Coogan ("Defendant Coogan") is an individual who at all pertinent times served as Corporation Counsel for the City of Melvindale and, upon information and belief, is a resident of Michigan and resides in the Eastern District of Michigan.

12. Defendants City, Public Safety Commission, Bolton, McIsaac, McDaniel, Hall, Alvarado, and Coogan will collectively be referred to herein as "Defendants" unless more specifically referenced.

13. The events giving rise to this matter occurred in the Eastern District of Michigan, and as a result venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391.

4

## Background Facts

14.     Plaintiff has worked within the Melvindale Police Department for twenty-two years.

15.     Plaintiff began his employment with Defendants on or about June 1998 as a patrolman, and over the years rose through the ranks until he achieved the rank of Lieutenant in 2014.

16.     The terms, benefits, and conditions of Plaintiff's employment are governed by the Collective Bargaining Agreement between the City of Melvindale and the Melvindale Police Supervisors' Association / Police Officers Labor Council.

17.     Plaintiff's performance has at all times been satisfactory or better.  He was highly trained and experienced, and received commendations from both his superiors and members of the public for his service on the police force.

18.     As a Lieutenant with the Melvindale Police Department Plaintiff had first-hand knowledge of the circumstances leading up to and surrounding the termination of Chad Hayse, former Melvindale Police Chief in August 2016.

19.     These circumstances are detailed in Hayse v. City of Melvindale, et. al., Case No. 17-cv-13294, which alleges violations of 42 U.S.C. § 1983. Plaintiff Hayse alleges that his due process and free speech rights were violated when he was terminated at the conclusion of a sham, preordained termination proceeding.

The real reason for Hayse's termination was that Defendants City of Melvindale, et. al. were determined to stop then-Police Chief Hayse from disciplining Matthew Furman for police misconduct. Furman was generating significant revenue for the City and the company Goch & Sons Towing, Inc. by his unrelenting use of work time to do nothing other than impound vehicles.

20.    Plaintiff was called to testify at the termination proceeding that took place with regard to Chad's employment on August 29, 2016.

21.    On August 29, 2016, Plaintiff gave a truthful account of what he observed with regard to Hayse's behavior and performance as the Chief of Police, including that Hayse had never disparaged the Mayor, other City officials, or City contractors in front of his subordinates.

22.    In September 2016, Defendant Coogan served Plaintiff with paperwork stating that Defendant Public Safety Commission sought his suspension, demotion, and/or termination, in large part because of the information he provided during Hayse's termination proceeding.

23.    Defendants' complaint for Plaintiff's suspension, demotion, and/or termination alleged that Plaintiff made unprofessional comments in the presence of his subordinates, lied to the Mayor and City Council during Hayse's August 29, 2016 termination proceeding, and violated the Melvindale Police Department Rules and Regulations and Operating Policy.

24.     Plaintiff never lied, and Defendants had no evidence that he had done so.

25.     Defendants' goal was to retaliate against Plaintiff for testifying favorably to then-Police Chief Hayse, who Defendants had already decided to fire.

26.     Significantly, Defendants' complaint against Plaintiff did not state what lie Plaintiff had allegedly lied to the Mayor and City Council.

27.     Prior to his trial board hearing, Plaintiff was never allowed to review any recording or transcript of his statements during the August 29, 2016 termination proceeding.

28.     Under the policies and regulations governing Plaintiff's retirement benefits, if Defendants terminated him in September 2016, he would have to wait until age 59 and ½ to draw his pension.

29.     In September 2016, Plaintiff planned on retiring from my position at age 50.

30.     Plaintiff believed Defendants intended to terminate him, so he prepared a statement to read aloud to them, in order to persuade them to suspend him, rather than terminate his employment.

31.     In Plaintiff's statement, he reiterated what he had stated at various points during the August 29, 2016 termination proceeding—that Plaintiff had never

heard Hayse disparage the Mayor, other City officials, or the City's towing contractor in front of their subordinates.

32.     After hearing Plaintiff's statement, and extracting a promise from him that in the future he would continue to testify truthfully about the circumstances leading up to Hayse's termination, Defendants agreed to suspend him for 30 days, rather than terminating him.

33.     In order to avoid termination, Plaintiff was also made to promise not to grieve the 30 day suspension through his Union.

34.     Plaintiff received no written documentation whatsoever stating that he was to serve a 30 day suspension. Upon information and belief, no such documentation exists.

35.     Plaintiff served the 30 day suspension from on or about September 13 through October 12, 2016.

36.     In or about December 2017, Plaintiff provided notice that he intended to retire on August 30, 2018.

37.     Plaintiff was thereafter placed in an inactive duty status, and was allowed to use his accrued sick and annual leave to remain out of work until his August 30, 2018 retirement date.

38.     Upon information and belief, Defendants backfilled his position.

39.     Plaintiff was subpoenaed, and on March 28, 2018, Plaintiff was deposed as a fact witness in Chad Hayse's federal lawsuit against the City and City Council members.

40.     Plaintiff testified truthfully and honestly at all times during his deposition. Additionally, Plaintiff's deposition testimony was consistent with the statements Plaintiff made during Hayse's August 29, 2016 termination proceeding, and Plaintiff's own September 2016 trial board hearing before Defendants.

41.     It is uncontested that Plaintiff's deposition testimony was harmful to the defendants in Hayse's federal lawsuit.

42.     It is uncontested that the statements and actions of all Defendants named in this case are also at issue in Chad Hayse's federal lawsuit.

43.     Defendants have personal and organizational interests in preventing the exposure of inculpatory information regarding their statements and actions in the Hayse federal lawsuit.

44.     Plaintiff testified that Hayse was terminated, in part, because he tried to reign in the actions of a rogue police officer, Matthew Furman, who was the main source of the City's towing-related income.

45.     On April 11, 2018, a Melvindale Police officer notified Plaintiff that on April 9, 2018, Defendant Coogan asked to meet with him and another officer.

46.    The officer explained that while in Defendant Coogan's office, Defendant Coogan said that Plaintiff was a liar, and that he had perjured himself during his recent deposition. Defendant Coogan offered to let the two officers read the transcript of Plaintiff's deposition.

47.    Defendant Coogan called Chester Kulesza, the Police Officer's Labor Council Field Representative for the Melvindale Police Supervisors' Association with the two officers in the room, on speakerphone.

48.    Defendant Coogan told Kulesza that Defendant Public Safety Commission wanted to discipline Plaintiff for testifying against the City.

49.    Based on this conversation the officers feared Defendants would attempt to punish them similarly if they spoke out or testified unfavorably against the City.

50.    In addition to Plaintiff, both officers were subpoenaed as witnesses in Hayse's federal lawsuit against the City of Melvindale, et. al.

51.    Hayse intends on calling Plaintiff as a witness at trial in his federal lawsuit against the City of Melvindale, et. al.

52.    Prior to the April 10, 2018 meeting of Defendant Public Safety Commission, Defendant Coogan provided all named Defendants with copies of Plaintiff's March 28, 2018 deposition transcript.

53.    Upon information and belief, Defendant Coogan also provided the entire Melvindale City Council with copies of Plaintiff's March 28, 2018 deposition transcript.

54.    During Defendant Public Safety Commission's April 10, 2018 meeting, Defendant Coogan falsely stated that Plaintiff had lied during his March 28, 2018 deposition.

55.    Defendant Coogan also told Melvindale Police Lieutenant Robert Kennaley that Plaintiff lied while under oath at his deposition.

56.    Upon information and belief, Defendant Coogan advised Defendant Public Safety Commission and/or individual members of the Commission to suspend, demote, and/or terminate Plaintiff.

57.    Defendants determined that they would take disciplinary action against Plaintiff by drafting a complaint against him, and setting the date for a trial board hearing on this complaint at their next meeting.

58.    Defendants have retaliated against, intimidated, and attempted to intimidate Plaintiff for speaking out against the wrongdoing he observed being committed by the City of Melvindale, its employees, appointees, and elected officials.

59.    Defendants are intimidating and attempting to intimidate other witnesses in this and the Hayse v. City of Melvindale et. al. case.

60.    Defendants have conspired to and attempted to silence Plaintiff from testifying further in Hayse's federal lawsuit.

## COUNT I
### *42 USC § 1983 – First Amendment Retaliation*

61.    Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

62.    The First Amendment to the United States Constitution provides that, "Congress shall make no law abridging the freedom of speech."

63.    Plaintiff engaged in Constitutionally protected speech when he testified about actions taken by the City of Melvindale, its employees, appointees, and elected officials at the August 29, 2016 termination proceeding for Chad Hayse and his March 28, 2018 deposition; and spoke in his own defense to Defendant Public Safety Commission at his September 2017 trial board hearing.

64.    This speech was on a matter of public concern, as its content included such topics as whether the City of Melvindale had illegally or improperly impounded vehicles, was policing for revenue, and whether Defendants played a role in terminating former Police Chief Hayse because he refused to ignore the improper, unlawful, and abusive tendencies of a Melvindale police officer because that officer generated hundreds of thousands of dollars for the City.

65.    Plaintiff's speech was not pursuant to his official duties.

12

66.     Plaintiff's interest as a citizen in speaking on this matter and bringing Defendants' wrongdoings to light outweighed Defendants' interest as an employer in promoting the efficiency of the public services they performed through their employees.

67.     Plaintiff's interest as a citizen in speaking on this matter was significant, as it concerned matters of law, ethics, and public safety that he was well informed of and entitled to make. The comment had no impact on the efficiency of the Melvindale Police Department whatsoever, and therefore Defendants had no interest in curtailing this speech to promote the efficiency of the public services they performed through their employees.

68.     Plaintiff was thereafter publically threatened with suspension, demotion and/or termination of his employment with the City, any of which would result in the loss of a significant portion of his retirement benefits as well as his future employment opportunities, reputation, honor, and good standing in the community. This action is sufficiently adverse so as to deter a person of reasonable firmness from exercising their right to free speech.

69.     Defendants' decision to publically take steps to suspend, demote, and/or terminate Plaintiff was motivated, at least in part, by Plaintiff's exercise of his First Amendment right to free speech.

70.     Defendants retaliated against Plaintiff for exercising his First Amendment right to free speech.

71.     Defendants acted with deliberate indifference to Plaintiff's presumed and actual innocence.

72.     Defendants agreed to, approved, and ratified this unconstitutional conduct.

73.     It would have been plainly obvious to a reasonable official that such actions or inaction would deprive or lead to the deprivation of Plaintiff's constitutional rights.

74.     Defendants' actions and inaction, as set forth above, were fundamentally unfair to Plaintiff.

75.     There exists no rational relationship between Plaintiff's actual conduct and the discipline imposed against him by Defendants.

76.     Defendants, by their agents, representatives, and employees acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

77.     The acts of Defendants and their agents, representatives, and employees represent official policy of the City of Melvindale and are attributable to the City of Melvindale.

78.     At all times material hereto, Plaintiff had a clearly established right to free speech which a reasonable public official would have known.

79.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to loss of employment and retirement benefits; denial of employment opportunities; negative publicity surrounding his removal restricting, if not destroying, future employment opportunities; false, permanent findings on Plaintiff's record for misconduct which did not occur; damage to Plaintiff's standing and associations in his community and imposition of a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT II
### *42 USC § 1985(2) – Conspiracy to Interfere with the Administration of Justice in Federal Courts*

80.     Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

81.     42 USC § 1985(2), in pertinent part, prohibits any two or more persons in any State or Territory from conspiring to, "deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such

court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified…"

82.    42 USC § 1985(3) provides a civil cause of action for an individual injured by any act in furtherance of the object of such a conspiracy.

83.    Plaintiff was deposed in Hayse's federal lawsuit against Defendant City on March 28, 2018. He will be called as a witness at trial.

84.    Defendants conspired to deter Plaintiff from testifying freely, fully, and truthfully as a witness at trial in Hayse's federal lawsuit.

85.    Defendants acted in concert to retaliate against Plaintiff by injuring him in his property interest because during his deposition he testified to information inculpating defendants in the Hayse matter.

86.    Prior to the April 10, 2018 public meeting of Defendant Public Safety Commission, Defendant Coogan provided Defendants copies of Plaintiff's deposition testimony, and, upon information and belief, advised them to take disciplinary action against Plaintiff because of his testimony.

87.    Furthermore, on April 9, 2018, Defendant Coogan intentionally telephoned Plaintiff's Union Field Representative to advise Plaintiff that retaliatory disciplinary action was forthcoming, and to deter him, and by implication, other witnesses, from providing further damaging testimony.

88.     Defendants thereafter acted in concert when, both before and during the April 10, 2018 meeting, they determined to write and serve Plaintiff with false allegations that he perjured himself during his March 28, 2018 deposition in order to retaliate against Plaintiff and prevent him from revealing further damaging information about their actions through his future testimony.

89.     Defendants calculated their concerted efforts to intimidate Plaintiff into not providing further damaging testimony by publically taking steps to suspend, demote, and/or terminate Plaintiff, thereby placing permanent negative designations on his employment record, and destroying his future employment opportunities, reputation, good standing in the community and access to his full retirement benefits.

90.     Defendants also calculated their concerted efforts to retaliate against Plaintiff for testifying against them by publically taking steps to suspend, demote, and/or terminate Plaintiff, thereby placing permanent negative designations on his employment record, and destroying his future employment opportunities, reputation, good standing in the community and access to his full retirement benefits.

91.     As a result of Defendants' intimidating and retaliatory actions, Plaintiff suffered irreparable harm, injury, and damages, including but not limited to negative publicity surrounding Defendants' public statements about his capacity

for truth and honesty, restricting, if not destroying, future employment opportunities; the specter of false, permanent findings on Plaintiff's record for misconduct which did not occur; damage to Plaintiff's standing and associations in his community and imposition of a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

92.    The acts of Defendants and their agents, representatives, and employees represent official policy of the City of Melvindale and are attributable to the City of Melvindale.

## COUNT III
### *42 USC § 1983 - Fourteenth Amendment Due Process*
### *Procedural Due Process*
### *Property and Liberty Interests*

93.    Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

94.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

95.    Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity which he cannot be deprived of by the State absent due process.

18

96.     Plaintiff has a protected liberty interest in pursuing his employment as an appointed public official who can only be removed for cause, as well as future employment opportunities and occupational liberty, which the State cannot deprive him of absent due process.

97.     Plaintiff has a protected property interest in his employment, which the State cannot deprive him of absent due process.

98.     Plaintiff had a constitutionally protected property interest in continuing his employment with the City of Melvindale without being subjected to false disciplinary action.

99.     Plaintiff was entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing.

100.    Plaintiff had a significant interest in avoiding negative and permanent designations on his employment record, as well as the tarnishing of his good name.

101.    Plaintiff was entitled to fundamentally fair procedures to determine whether violations of the police rules, regulations, policies, and procedures occurred.

102.    Regardless, Defendants suspended Plaintiff for 30 days, depriving him of his liberty and property interests, without affording him basic due process rights.

103. Defendants denied Plaintiff the opportunity to be heard in any meaningful way, as the sham trial board served as a mere pretense for Defendants' pre-determined decision to punish Plaintiff.

104. In order to avoid termination in September 2016, Plaintiff was forced to write and read a prepared statement reiterating that he had never heard Hayse disparage the Mayor, other City officials, or the City's towing contractor in front of their subordinates; promise to testify truthfully; and waive his right to grieve the suspension.

105. Plaintiff was denied a meaningful opportunity to clear his name.

106. Plaintiff's liberty and property interests were invaded by Defendants in an arbitrary and irrational manner.

107. Defendants acted with deliberate indifference to Plaintiff's presumed and actual innocence.

108. Defendants agreed to, approved, and ratified this unconstitutional conduct.

109. It would have been plainly obvious to a reasonable official that such actions or inaction would deprive or lead to the deprivation of Plaintiff's constitutional rights.

110. Defendants' actions and inaction, as set forth above, were fundamentally unfair to Plaintiff.

20

111.   There exists no rational relationship between Plaintiff's actual conduct and the discipline imposed against him by Defendants.

112.   In depriving Plaintiff of his constitutionally protected rights, including his liberty interest in his good name, reputation, honor, integrity, opportunity to pursue employment, and his property interest in his employment, Defendants violated Plaintiff's right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

113.   Defendants, by their agents, representatives, and employees acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

114.   The acts of Defendants and their agents, representatives, and employees represent official policy of the City of Melvindale and are attributable to the City of Melvindale.

115.   At all times material hereto, Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known.

116.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to denial of employment opportunities; negative publicity surrounding his suspension restricting, if not destroying, future employment opportunities; false, permanent findings on Plaintiff's record for misconduct which did not occur;

damage to Plaintiff's standing and associations in his community and imposition of a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT IV
## Defamation

117.   Plaintiff repeats and realleges all paragraphs set forth above with the same force and effect as though set forth in full herein.

118.   Defendants' statements about Plaintiff set forth above are false. Moreover, the statements, individually and jointly, tend to so harm the reputation of Plaintiff as to lower his reputation in the community or deter third persons from associating or dealing with him.

119.   Furthermore, Defendant Coogan's statements involve materially false implications.

120.   Defendant Coogan verbally published such statements, as described in detail above, negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

121.   The statements set forth above do not involve matters of public concern, nor do they affect any interests of Defendant Coogan.

122.   When he made these statements, Defendant Coogan was not acting within the scope of any public authority or duty, nor could he have reasonably believed he was acting within the scope of any such authority or duty.

123.   The above publications were not privileged.

124.   Defendant Coogan's statements constituted defamation per se.

125.   Defendant Coogan's conduct in this matter, which proximately caused Plaintiff's injuries and damages, was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Plaintiff's physical and emotional wellbeing.

126.   The publication of these remarks has resulted in actionable damage to Plaintiff's reputation in the community, emotional distress, humiliation, mortification, embarrassment, sleeplessness and anxiety, and other damage that may arise during the course of discovery.

127.   Defendant Coogan's conduct deliberately and intentionally injured the Plaintiff; his acts were willful and malicious and are not dischargeable in bankruptcy.

## COUNT V
### Tortious Interference with a Contract or Advantageous Business Relationship or Expectancy

128.   Plaintiff repeats and realleges paragraphs set forth above with the same force and effect as though set forth in full herein.

23

129.   Defendant Coogan falsely accused Plaintiff of perjury on multiple occasions in an attempt to retaliate against and intimidate him because of Plaintiff's unfavorable testimony.

130.   Defendant Coogan's accusations resulted in Plaintiff's receipt of a 30 day suspension and Defendant Coogan has further threatened and advocated for Plaintiff's suspension, demotion, and/or termination, which will result in the loss of his retirement benefits.

131.   Defendant Coogan's false accusations against Plaintiff were made to the City of Melvindale and Public Safety Commission, with whom Plaintiff had a contract or business relationship or expectancy.

132.   The business relationship and expectancies had a reasonably likelihood of future economic benefit for Plaintiff.

133.   Defendant Coogan knew of the contracts and business relationships and expectancies between Plaintiff, the City of Melvindale, and the Public Safety Commission.

134.   By his conduct as described above, Defendant Coogan intentionally and improperly interfered with the contracts and business relationships and expectancies between Plaintiff, the City of Melvindale, and the Public Safety Commission.

135. Defendant Coogan's conduct was intended to, and did, interfere with the contracts and business relationships and expectancies between Plaintiff, the City of Melvindale, and the Public Safety Commission.

136. As a direct and proximate result of Defendant Coogan's wrongful conduct, Plaintiff has suffered substantial economic injury, loss of goodwill, harm to his business reputation, loss of esteem and standing in the community, and loss of business opportunities.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

### A. LEGAL RELIEF

1. Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

2. A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

3. Exemplary damages in whatever amount Plaintiff is found to be entitled;

4. Punitive damages in whatever amount Plaintiff is found to be entitled; and

5. An award of interest, costs and reasonable attorney fees.

### B. DECLARATORY & EQUITABLE RELIEF

1. An order from this Court requiring the City of Melvindale to remove discipline related to the claims in this case from

Plaintiff's record and provide Plaintiff his full retirement benefits upon his retirement date;

2.   An injunction from this Court prohibiting any further acts of discrimination, intimidation, or retaliation;

3.   An award of interest, costs, and reasonable attorney fees; and

4.   Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.


**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

Dated:  July 13, 2018

## JURY DEMAND

Plaintiff**,** by his attorneys **Deborah Gordon Law,** demands a trial by jury of all the issues in this cause.

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com

Dated:  July 13, 2018