## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHAEL WELCH,

        Plaintiff,

v.

CASE NO.: 18-cv-11450
HON. LAURIE J. MICHELSON
MAG. JUDGE MONA K. MAJZOUB

CITY OF MELVINDALE, a political subdivision
of the State; MELVINDALE PUBLIC SAFETY
COMMISSION, a political advisory body of the
City of Melvindale; JEFFERY [c/k/a JEFFREY] BOLTON,
KEVIN MCISAAC, MARTHA MCDANIEL,
PATRICIA HALL and LAWRENCE COOGAN, individuals,
sued in their official and personal capacities,

        Defendants.

---

### DEFENDANTS, CITY OF MELVINDALE, MELVINDALE PUBLIC SAFETY COMMISSION, JEFFREY BOLTON, KEVIN McISAAC, MARTHA McDANIEL AND PATRICIA HALL'S, MOTION FOR SUMMARY JUDGMENT

**NOW COME** Defendants, **CITY OF MELVINDALE, MELVINDALE PUBLIC SAFETY COMMISSION, JEFFREY BOLTON, KEVIN McISAAC, MARTHA McDANIEL and PATRICIA HALL**, by and through their attorneys, **PLUNKETT COONEY**, and for their Motion for Summary Judgment, hereby state as follows:

1.    Plaintiff filed this action against these Defendants alleging retaliation in violation of the First Amendment, conspiracy under 42 U.S.C. §

1

1985, and an alleged denial of due process under the 14th Amendment.[1]

2.      Plaintiff's claims against the Melvindale Public Safety Commission are properly dismissed, as it is not a juridical entity capable of being sued.

3.      Plaintiff's claims against Defendants Bolton, McIsaac, McDaniel, and Hall in their official capacities are duplicative of the claims against the City of Melvindale and are accordingly properly dismissed.

4.      Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine.

5.      Plaintiff cannot establish a violation of either substantive or procedural due process given the undisputed facts.   Plaintiff received adequate procedural process and has not identified a cognizable substantive due process claim, particularly as a more specific amendment applies in light of Plaintiff's allegations.  Further, there was no deprivation of Plaintiff's rights in this regard.

6.      Plaintiff's First Amendment claim is unsustainable because Plaintiff did not speak as a private citizen about a matter of public concern and therefore did not engage in protected activity, nor was Plaintiff subjected to an adverse action as the result of any protected activity.

---

[1] Plaintiff also pled claims of defamation and tortious interference against Co-Defendant Lawrence Coogan.

7.     Plaintiff's claim against the City fails because Plaintiff has failed to

allege, and cannot establish, that a City policy was the moving force behind

any constitutional violation.

8.     Additionally, Plaintiff's claims fail because the individual

Defendants are entitled to qualified immunity.

9.     For the reasons set forth above and in the brief in support of this

motion, these Defendants are entitled to summary judgment as a matter of

law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

10.    On March 21, 2019, counsel for these Defendants contacted

Plaintiff's counsel and explained this motion and its bases and sought, but was

unable to obtain, concurrence.

**WHEREFORE** these Defendants pray this Honorable Court GRANT their

Motion for Summary Judgment, together with such additional relief in

Defendants' favor as this Court deems just and proper.

Respectfully submitted,

**PLUNKETT COONEY**

By */s/Audrey J. Forbush*
AUDREY J. FORBUSH (P41744)
RHONDA R. STOWERS (P64083)
Attorneys for Defendants, City of
Melvindale, Melvindale PSC,
Bolton, McIsaac, McDaniel
and Hall

3

Plaza One Financial Center
111 E. Court Street – Suite 1B
Flint, MI 48502
(810) 342-7014
aforbush@plunkettcooney.com

Dated: March 22, 2019

4

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHAEL WELCH,

      Plaintiff,

v.

      CASE NO.:  18-cv-11450
      HON. LAURIE J. MICHELSON
      MAG. JUDGE MONA K. MAJZOUB

CITY OF MELVINDALE, a political subdivision
of the State; MELVINDALE PUBLIC SAFETY
COMMISSION, a political advisory body of the
City of Melvindale; JEFFERY [c/k/a JEFFREY] BOLTON,
KEVIN MCISAAC, MARTHA MCDANIEL,
PATRICIA HALL and LAWRENCE COOGAN, individuals,
sued in their official and personal capacities,

      Defendants.

---

### BRIEF IN SUPPORT OF DEFENDANTS, CITY OF MELVINDALE, MELVINDALE PUBLIC SAFETY COMMISSION, JEFFREY BOLTON, KEVIN McISAAC, MARTHA McDANIEL AND PATRICIA HALL'S, MOTION FOR SUMMARY JUDGMENT

**NOW COME** Defendants, **CITY OF MELVINDALE, MELVINDALE PUBLIC SAFETY COMMISSION, JEFFREY BOLTON, KEVIN McISAAC, MARTHA McDANIEL and PATRICIA HALL,** by and through their attorneys, **PLUNKETT COONEY**, and hereby state the following in support of their Motion for Summary Judgment:

i

## QUESTIONS PRESENTED

1. Should the Public Safety Commission be dismissed because it is not a legal entity capable of being sued? **(yes)**

2. Are the official capacity claims against Defendants Bolton, McIsaac, McDaniel and Hall duplicative of the claims against the City of Melvindale? **(yes)**

3. Is Plaintiff's conspiracy claim barred by the intracorporate conspiracy doctrine? **(yes)**

4. Has Plaintiff failed to establish a violation of either substantive or procedural due process? **(yes)**

5. Does Plaintiff's First Amendment claim fail because Plaintiff was not speaking as a public citizen on a matter of public concern and did not experience an adverse action? **(yes)**

6. Has Plaintiff failed to establish that a policy of the City of Melvindale was a moving force behind any constitutional violation? **(yes)**

7. Are Defendants Bolton, McIsaac, McDaniel and Hall entitled to qualified immunity in their individual capacities? **(yes)**

## CONTROLLING/APPROPRIATE AUTHORITIES

*Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010)

*Amadasu v. The Christ Hosp.*, 514 F.3d 504 (6th Cir. 2008)

*Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010)

*Cockrel v. Shelby County School Dis.*, 270 F.3d 1036 (6th Cir. 2001)

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580 (6th Cir. 2012)

*Dorsey v. Barber*, 517 F.3d 389 (6th Cir. 2008)

*Ebelt v. County of Ogemaw*, 231 F. Supp. 2d 563 (E.D. Mich. 2002)

*Jackson v. Heh*, 215 F.3d 1326 (6th Cir. 2000)

*McPherson v. Fitzpatrick*, 63 Mich. App. 461 (1975)

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)

*United States v. Alvarez*, 567 U.S. 709 (2012)

*Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007)

## INTRODUCTION

Plaintiff was an employee of the Melvindale Police Department who voluntarily retired at age 50. He is suing because of a 30-day suspension that he agreed to and, in fact, requested after making false statements during the termination hearing of another employee, his friend, former Chief of Police Chad Hayse. When Plaintiff subsequently testified in a deposition during Mr. Hayse's ensuing lawsuit, these Defendants were notified that Plaintiff had lied under oath. They passed a resolution to look into the matter (with Defendant Hall voting no), but after further consideration, the resolution was rescinded and no further action was taken.

## STATEMENT OF FACTS

For purposes of this Motion, only, these Defendants will not dispute the following due to the applicable motion standard. Based on the undisputed facts, these Defendants are entitled to summary judgment as a matter of law.

Plaintiff is a police officer formerly with the City of Melvindale. (Pl.'s Am. Compl., filed with this Court, ¶ 15, PageID.1089). On August 29, 2016, Plaintiff testified under oath at the disciplinary hearing of former Chief Chad Hayse. (Exhibit 1, Transcript, p. 139-149). Plaintiff was asked whether Hayse ever told any officer not to tow cars because of the towing provider, Goch & Sons, who had been awarded the contract. (Exhibit 1, p. 140-141). Plaintiff

1

was also asked by Hayse about derogatory comments that Hayse may have

made, and testified as follows:

> CHIEF HAYSE:  Lieutenant, have you ever heard me make disparagring remarks regarding any public official, appointed official, or Michael Goch from Goch & Sons Towing?
>
> LIEUTENANT WELCH:  No direct.  We have had personal conversation in regards to the way the tow contract had been awarded, but no personal attacks in front of anybody else.  In personal conversation, yes. (Exhibit 1, p. 140-141).

Later in the hearing, Plaintiff testified again concerning derogatory remarks,

confirming that the derogatory comments he hear from Hayse did not concern

Goch & Sons:

> MR. GUZALL:  Okay.  In this personal conversation that you say you had with the chief in regards to Goch & Sons, did he say any derogatory things with Goch & Sons?
>
> LIEUTENANT WELCH:  No. (Exhibit 1, p. 145).

The following day, several witnesses testified that Hayse made derogatory

comments about public officials and Goch & Sons with Plaintiff present.[2]

(Exhibit 2, p. 62-65, & 68).  Plaintiff's testimony was questioned, but he was

not recalled due to objection by Chief Hayse.  (Exhibit 2, Transcript, p. 73).

Members of the Melvindale Public Safety Commission were present

during the Hayse' hearings and one, Defendant Bolton, issued charges to be

---

[2] Individuals also testified that Plaintiff, himself, made derogatory statements about the Mayor, City Attorney, and others.  (Exhibit 2, pp. 68-69).

heard by the Trial Board of the Melvindale Public Safety Commission

concerning Plaintiff's perceived misconduct, which included making

unprofessional comments and lying to the Mayor and City Council at the

termination hearing. (Exhibit 3, Charges Packet).

Prior to the Trial Board hearing, Plaintiff prepared a written statement,

which was read by his union representative at the hearing. (Exhibit 4, Pl.'s

Dep., pp. 56-57). In the statement, Plaintiff claimed that he was "like a deer in

headlights" and he "blanked" on the questions at the Hayse hearing. (Exhibit

5, Statement). He then went on to make admissions that his prior testimony

was not accurate, admitting that Hayse had, indeed, made negative comments

about Goch. (Exhibit 5). He made excuses for his testimony by stating that

"any misstatements were due to the stress of the situation." (Exhibit 5). He

also stated:

> The day after my testimony, I approached John Allen. I asked him
> to set up a meeting with the Mayor and Mr. Coogan **to correct the
> situation**. I then spoke with my union rep who advised me not to
> say anything at that time. In conversation with the Mayor
> yesterday, we tried to get the opportunity to **re-answer** the
> questions asked of me at Chad Hayse's hearing **so I could correct
> the record.** (Exhibit 5, emphasis added).

Plaintiff, upon the advice of his union representation, offered to take a

suspension at the hearing. (Exhibit 4, p. 63). This offer was made right at the

beginning of the hearing as a proposed resolution. (Exhibit 4, p. 64-65). The

3

length of the suspension was negotiated, and it was ultimately determined
that Plaintiff would receive a 30-day suspension, would not file a grievance,
and agreed to testify truthfully in any upcoming depositions in regards to the
Hayse lawsuit. (Exhibit 4, pp. 72-73; Exhibit 6, Minutes).

Plaintiff served his suspension and returned to work in October of 2016.
(Exhibit 4, p. 79). He submitted his notice of retirement in December 2017
and went on inactive status in January of 2018 in order to use up his
accumulated time off until the date of his retirement, which was August 31,
2018. (Exhibit 4, pp. 12 and 80).

In March 2018, Plaintiff was subpoenaed to testify in civil litigation filed
by Hayse. (Exhibit 4, p. 20). City attorney, Larry Coogan, provided the
deposition transcript to members of the Public Safety Commission, and told
them that it appeared that Plaintiff did not testify truthfully during his
deposition. (Exhibit 7, Hall's Dep., p. 130). The Commission accordingly
entered a resolution (with Defendant Hall voting "no"), which stated:

> Moved by McIsaac, and supported by McDaniel, to set a trial board
> date and draft a complaint against Lt. Michael Welch regarding his
> truthfulness and voracity [sic] during his testimony in front of the
> Public Safety Commission in closed session and compare it to his
> testimony during his recent deposition in the Chad Hayse lawsuit
> against the City. (Exhibit 8, Minutes).

4

At the time of the resolution, not all of the Commissioners had reviewed the deposition transcript. (Exhibit 7, p. 130). The resolution was rescinded at a later Commission meeting and no charges were ever filed against Plaintiff, nor did he ever have to appear at a Trial Board hearing. (Exhibit 4, p. 87). In short, no action was ever taken. (Exhibit 4, p. 116). Plaintiff retired on August 31, 2018 as he had planned with his full benefits. (Exhibit 4, pp. 87-88).

## **MOTION STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To create a genuine issue of material fact the non-movant must do more than present some evidence capable of being admitted at trial on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), " [t]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, (1986).

## ANALYSIS

Plaintiff has brought claims against the City of Melvindale, its Public Safety Commission, and Defendants Bolton, McIsaac, McDaniel and Hall, in their official and individual capacities, claiming violations of the First and Fourteenth Amendments and conspiracy pursuant to 42 U.S.C. § 1985. These claims are not sustainable on the facts of this case, and these Defendants are entitled to summary judgment.

### The Melvindale Public Safety Commission is Not a Legal Entity

Plaintiff cannot succeed on his claims against the Melvindale Public Safety Commission, because the Commission is not recognized as a legal entity separate from the City of Melvindale. It has long been established in Michigan law that a municipal department or commission (such as the Melvindale Public Safety Commission) is not a legal entity that can be sued in tort. As explained by the Michigan Court of Appeals:

> The formation of any city department, be it water, fire or police, together with its rules, regulations and department heads and administrators, is only a means of promoting the efficient operation of the municipality. A municipal department, board or commission...is unable to raise funds for payment and is not liable in tort.

*McPherson v. Fitzpatrick*, 63 Mich. App. 461, 463-64 (1975) (citing *O'Leary v. Marquette Bd. of Fire and Water Commission'rs*, 79 Mich. 281 (1890)); *see also*

6

*Davis v. Chrysler Corp.*, 151 Mich. App. 463, 466 n.1 (1986) ("Although plaintiffs' complaint named the Detroit Public Lighting Department as a defendant, the Department is not a separate legal entity against which a tort action can be directed."). The Melvindale Public Safety Commission must be dismissed from this litigation.

## **Plaintiff's Official Capacity Claims are Properly Dismissed as Duplicative**

Plaintiff has asserted claims against Defendants Bolton, McIsaac, McDaniel and Hall in their official capacities. An official sued in his official capacity is not a "person" within the meaning of 42 U.S.C. § 1983. *Hawks v. Jones*, 105 F. Supp.2d 718 (E.D. Mich. 2000). Instead, a claim against an individual in his official capacity is equivalent to a lawsuit directed against the public entity which that individual represents. *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (*quoting Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

Here, the claims asserted include both official capacity claims against the individual Public Safety Commissioners and claims against the City of Melvindale. (Pls.' Am. Compl.). As official capacity claims are the equivalent of

7

a suit against the government entity, and as the City is a named defendant in this matter, Plaintiff's official capacity claims are duplicative, and the dismissal of the official capacity claims is warranted. *Ebelt v. County of Ogemaw*, 231 F. Supp.2d 563, 568 (E.D. Mich. 2002); *Vance v. County of Santa Clara,* 928 F. Supp. 993, 996 (N.D.Cal.1996) ("The Court follows other District Courts in holding that if individuals are being sued in their official capacity as municipal officials *and* the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed.").

## **Plaintiff's Conspiracy Claim is Barred by the Intracorporate Conspiracy Doctrine**

Plaintiff's claim of conspiracy against Defendants is fatally flawed because all of the Defendants are members of the same legal entity – the City of Melvindale. The intracorporate conspiracy doctrine therefore bars Plaintiff's claim.

"According to the intracorporate conspiracy doctrine, members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999). The doctrine is applicable in claims brought pursuant to 42 U.S.C. § 1985. *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008).

8

When investigating allegations of officer misconduct and conducting

disciplinary hearings of police officers, the Commission members were acting

pursuant to their role and authority as the Public Safety Commission, which is

to "exercise fully all the powers and perform all the duties pertaining to the

government, management, maintenance and direction of the Police and Fire

Departments of the City, and all the premises and property thereof, including

all appointments to such forces." (Exhibit 9, Charter, Ch. 20, § 5(a)). All of the

named Defendants are the City, its Public Safety Commission, its Public Safety

Commissioners, and its City attorney. They therefore constitute a single entity

for purposes of a claim of conspiracy. Plaintiff therefore cannot meet the

necessary element of two or more people to establish his claim of conspiracy.

*Hull v. Coyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505,

510 (6th Cir. 1991) ("Since all of the defendants are members of the same

collective entity, there are not two separate "people" to form a conspiracy.").

Summary judgment must enter in these Defendants' favor with regard to this

claim.

## **Plaintiff Cannot Establish a Violation of Due Process**

Plaintiff claims that these Defendants violated his due process rights by

depriving him of liberty and property interests, namely, his right to his

reputation and his employment with the City of Melvindale, when they

9

suspended him for 30 days. (Pl.'s Am. Compl., ¶ 102, PageID.1103). These

purported interests are not sufficient to state a claim on the facts of this case.

"It is not the case that every action, no matter how small, is constitutionally

cognizable." *See Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (1999) (citing

*Ingraham v. Wright*, 430 U.S. 651, 674 (1977)) ("there is, of course, a de

minimis level of imposition with which the Constitution is not concerned").

Plaintiff has failed to establish a *prima facie* claim,[3] and Defendants are

entitled to summary judgment.

"It is the liberty to pursue a calling or occupation, and not the right to a

specific job, that is secured by the Fourteenth Amendment." *Bernard v. United*

*Township High Sch. Dist. No. 30*, 5 F.3d 1090, 1092 (7th Cir. 1993).

Accordingly, "the loss of one job and certain future opportunities does not

constitute deprivation of a protected liberty interest. Indeed, it is only where

the defendant's action effectively precludes the plaintiff from practicing his

---

[3] It is not clear from the Amended Complaint whether Plaintiff is claiming a violation of substantive due process or merely a procedural one. As Plaintiff claims deprivation of these purported rights due to speech, any substantive due process claim would be unsustainable. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting in part *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'").

10

trade with all employers or customers that the plaintiff's liberty interest in

pursuing his occupation is infringed." *Jackson v. Heh*, 215 F.3d 1326 (6th Cir.

2000). That did not occur in this case; in fact, Plaintiff did not lose his job at

all. Plaintiff has failed to establish a protected liberty interest in his

employment.

Similarly, with regard to Plaintiff's alleged reputation, he must establish

that Defendants made false, stigmatizing statements about him. *Bessent v.*

*Dyersburg State Community College*, 224 Fed. Appx. 476, 480 (6th Cir. 2007).

Plaintiff cannot make this showing as to these Defendants. Plaintiff's Trial

Board took place in a closed session and the motion to suspend him and the

minutes memorializing that motion only stated the agreement of the parties,

not Defendants' opinions about Plaintiff. (Exhibit 6). Plaintiff has not

identified any false, stigmatizing statements made by any of these Defendants

that resulted in harm to Plaintiff's reputation. Plaintiff has failed to identify a

protected liberty or property interest.

Plaintiff also cannot establish a lack of procedural due process,

regardless. "In order to establish a procedural due process claim, a plaintiff

must show that (1) he had a life, liberty, or property interest protected by the

Due Process Clause; (2) he was deprived of this protected interest; and (3) the

state did not afford him adequate procedural rights prior to depriving him of

11

the property interest." *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010)

(*quoting Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 611 (6th Cir.2006)).

As earlier-stated, Plaintiff was not deprived of a protected liberty or property

interest. Plaintiff was also clearly afforded adequate procedural rights.

"The essential requirements of due process...are notice and an

opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532,

546 (1985).

All that is required by the Due Process Clause of the Fourteenth

Amendment is "notice reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Ming Kuo Yang v. City of Wyoming*,

793 F.3d 599, 602 (6th Cir. 2015) (quoting *Mullane v. Cent. Hanover Bank &

Trust Co.*, 339 U.S. 306 (1950)).

Plaintiff received notice of the charges against him on September 7, well

before the Trial Board hearing on the 13th. The charging paperwork

identified the provisions and conduct at issue, such that Plaintiff was able to

draft a detailed written statement. He met with his union counsel prior to the

hearing and had counsel present at the hearing. At no time did Plaintiff

request a postponement; instead, he "short-circuited" the process by

immediately requesting a suspension as a resolution in lieu of proceeding

with a Trial Board hearing. He negotiated the resolution with the City through his counsel and agreed to take a suspension (a resolution he proposed). Plaintiff cannot establish constitutionally inadequate process on these facts.

**Plaintiff Cannot Establish a First Amendment Violation**

To establish a prima facie case of First Amendment retaliation requires a showing that Plaintiff engaged in a constitutionally protected activity. *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004). Plaintiff's claim fails in this regard because the misstatements he made under oath are not protected speech. *United States v. Alvarez*, 567 U.S. 709, 720–21 (2012) (perjury not protected); *Williams v. Com of Ky.*, 24 F.3d 1526, 1535 (6th Cir. 1994) (Courts have "declined to extend protection to false statements that are knowingly or recklessly made."); *Pickering v. Board of Educ.*, 391 U.S. 563, 574 (1983).

In the hearing, Plaintiff testified:

> MR. GUZALL: Okay. In this personal conversation that you say you had with the chief in regards to Goch & Sons, did he say any derogatory things with Goch & Sons?
>
> LIEUTENANT WELCH: No. (Exhibit 1, p. 145).

Plaintiff's written statement confirms this misstatement: "I was asked if Chief Hayse had ever said anything negative about Mike Goch and the Mayor. The answer to that question is yes." (Exhibit 5). On this basis alone, Plaintiff's claim is concerning his suspension is unsustainable.

Furthermore, in order to find protected speech exists, the Supreme

Court has "long imposed the threshold requirements that the employee (1) must have spoken as a citizen, and (2) must have addressed matters of public concern." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007). Each of these is a question of law for the Court. *See, e.g., Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001) ("the issue of whether a plaintiff engaged in protected speech is a question of law for the court").

Plaintiff's speech is not protected because he was not speaking as a citizen when making the alleged speech. In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the United States Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. In other words, a public employee's speech is not protected when it "owes its existence to [the employee's] professional responsibilities." *Weisbarth, supra* at 544. The plaintiff in *Weisbarth* claimed that she had been terminated for statements she made to a third party that was investigating department morale. The plaintiff argued that speaking to the consultant was not actually part of her "official duties" as a park ranger. The Sixth Circuit held that

14

plaintiff's speech owed its existence to her official job duties and therefore was not entitled to protection.

Similarly, in this case, the City was holding a hearing to evaluate its Chief of Police and his alleged conduct. Plaintiff was providing testimony concerning his observations within the police department as part of that evaluation. Reporting the conduct of a fellow police officer and day-to-day activities were within confines of his own duties as a police officer. At no time while testifying did Plaintiff allege any violation of the law by anyone in the department. His testimony was about whether he had heard statements by Hayse and how Hayse conducted himself, like the performance and morale complaints in *Weisbarth*. Plaintiff was speaking as a public employee and not a private citizen.

Not only was Plaintiff not speaking as a private citizen, but Plaintiff was not speaking about matters of public concern. To determine if the speech addresses a matter of public concern, the court must look to the content, form, and context of the speech in question. *Bonnel v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001). Matters which are merely a private concern are not protected. *Cockrel v. Shelby County School Dis.,* 270 F.3d 1036, 1051 (6th Cir. 2001). Again, Plaintiff was providing testimony to the City about a fellow employee. There is no evidence in this case that Plaintiff was seeking to protect the

15

public during his testimony.  He did not accuse anyone at the department of unlawful conduct; he answered questions concerning day-to-day operations and whether Hayse had made any disparaging comments (and did not testify accurately in that regard).  Plaintiff did not speak on a matter of public concern and summary judgment is therefore warranted.

With regard to the resolution concerning his deposition testimony, Plaintiff did not experience any harm or adverse action.  No charges were ever issued, Plaintiff was never summoned to a Trial Board, and his employment was not impacted in any way.  The requisite adverse action necessary to sustain a First Amendment claim is wholly lacking.  *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) ("when a plaintiff's alleged adverse action is 'inconsequential,' resulting in nothing more than a 'de minimis injury,' the [First Amendment] claim is properly dismissed as a matter of law"); *Brown v. Crowley*, 312 F.3d 782, 801 (6th Cir. 2002) ("Where, as here, a challenged action has no consequences whatsoever, either immediate or long-term, it ineluctably follows that such an action is 'inconsequential.'").  Summary judgment must enter in Defendants' favor.

**Plaintiff Cannot Establish an Unconstitutional Policy of the City**

A municipality cannot be held vicariously liable for the alleged constitutional torts of its employees; that is, *respondeat superior* is not a viable

16

theory of recovery. *Monell v. Dep't. of Social Services,* 436 U.S. 658, 691 (1978).

Rather, liability will attach only where the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind the alleged deprivation of the plaintiff's rights. *Id.; Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). In other words, "governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).

"[T]o satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993). Additionally, a single incident of unconstitutional activity does not establish an official policy or practice of a municipality sufficient to render the municipality liable for damages under section 1983. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Plaintiff cannot show that such a policy existed in this instance. Unable to point to any unconstitutional policy of the City, Plaintiff alleges that the actions of the Defendants constitute City policy. (Pl.'s Am. Compl., ¶ 77, 92, & 114, PageID.1098, 1102 & 1105).

17

"The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986). The Public Safety Commission is not the final word on the policies for the police department, or even itself. The City Charter states: "All rules and regulations of the Commission of Public Safety shall become effective only after the same have been approved by the Mayor and Council." (Exhibit 9, Ch. 20, § 13). Plaintiff has not established any unconstitutional policy, and the City is entitled to summary judgment.

## The Individual Capacity Claims are Barred by Qualified Immunity

"Qualified immunity grants government officials engaged in discretionary activities immunity from individual liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). This "means existing case law must clearly and specifically hold that what the officer did—under the circumstances the officer did it—violated the Constitution." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2005). Qualified immunity is a question of law for

18

the Court, and plaintiffs bear the burden of demonstrating that the defendant is not entitled to qualified immunity. *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007).

The qualified immunity analysis involves two questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). These questions need not be answered in any particular order. *Pearson v. Callahan*, 555 U.S. 223, 236-237 (2009). If no constitutional right was violated, or if the constitutional right was not clearly established, qualified immunity serves to bar the claim. Furthermore, in performing this analysis, "[e]ach defendant's liability must be assessed individually based upon his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

Plaintiff asserts that the individual Defendants Bolton, McIsaac, McDaniel and Hall violated his rights when they settled with the union on a 30-day suspension and when they passed the resolution to compare his deposition testimony with what he had previously told the Trial Board. As previously briefed, Plaintiff cannot establish that his constitutional rights were violated. Plaintiff's First and Fourteenth Amendment claims are not

19

viable on the undisputed facts of this case. For this reason, Defendants are entitled to qualified immunity.[4]

This is true even if Plaintiff establishes that Defendants were ultimately mistaken as to whether Plaintiff purposely misspoke. The qualified immunity analysis permits reasonable mistakes. *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Defendants understood that Plaintiff testified that he never heard Hayse make a derogatory comment about Goch & Sons, even in private. They then heard him contradict himself in the statement he read to them at his Trial Board hearing. (Exhibit 5). Plaintiff's excuse was that he was so nervous during his testimony in the Hayse discipline hearing that he "blanked" and had no idea what he said – although he was a police detective who had testified numerous times in court. (Exhibit 5). His expressed desire to "correct the situation" and "the record" by "re-answer[ing] the questions asked" pointed Defendants to the reasonable conclusion that his testimony had not been truthful and Plaintiff knew it. In these circumstances, the issuance of a suspension was not a clearly established violation of any constitutional right of Plaintiff. Summary judgment is warranted in favor of these Defendants.

---

[4] This is especially true as to Ms. Hall, who did not even vote in favor of the resolution to hold a Trial Board to compare Plaintiff's testimony with the statements he made to the Trial Board.

## **CONCLUSION**

For all of the above reasons, Defendants are entitled to summary judgment as a matter of law.

Respectfully submitted,

**PLUNKETT COONEY**

By _**/s/Audrey J. Forbush**_
AUDREY J. FORBUSH  (P41744)
RHONDA R. STOWERS (P64083)
Attorneys for Defendants, City of
    Melvindale, Melvindale PSC,
    Bolton, McIsaac, McDaniel
    and Hall
Plaza One Financial Center
111 E. Court Street – Suite 1B
Flint, MI  48502
(810) 342-7014
aforbush@plunkettcooney.com

Dated:  March 22, 2019

## **PROOF OF SERVICE**

KATHALEEN M. FORDE hereby certifies that on the 22nd day of March 2019, she caused to be served a copy of DEFENDANTS, CITY OF MELVINDALE, MELVINDALE PUBLIC SAFETY COMMISSION, JEFFREY BOLTON, KEVIN McISAAC, MARTHA McDANIEL and PATRICIA HALL'S MOTION FOR SUMMARY JUDGMENT, BRIEF IN SUPPORT OF MOTION and PROOF OF SERVICE via CM/ECF electronic filing with the United States District Court for

the Eastern District of Michigan, Southern Division, which will then provide

electronic notice of this filing to counsel of record.

*/s/Kathaleen M. Forde*
KATHALEEN M. FORDE

Open.20213.81784.21842395-1

22