# EXHIBIT AR

Execution Copy

# COLLECTIVE BARGAINING AGREEMENT

# CITY OF MELVINDALE

# MELVINDALE POLICE SUPERVISORS' ASSOCIATION / POLICE OFFICERS LABOR COUNCIL

# SERGEANTS AND LIEUTENANTS

# JANUARY 1, 2013 TO DECEMBER 31, 2016

1

Exhibit 2                                                                      Melvindale - 66

Execution Copy

## Table of Contents

ARTICLE 1 ................................................................................................................ 4
AGREEMENT ........................................................................................................... 4
ARTICLE 2 ................................................................................................................ 4
PURPOSE AND INTENT .......................................................................................... 4
ARTICLE 3 ................................................................................................................ 4
RECOGNITION ........................................................................................................ 4
ARTICLE 4 ................................................................................................................ 5
AGENCY SHOP ........................................................................................................ 5
ARTICLE 5 ................................................................................................................ 5
REPRESENTATION .................................................................................................. 5
ARTICLE 6 ................................................................................................................ 5
GRIEVANCE PROCEDURE ...................................................................................... 5
ARTICLE 7 ................................................................................................................ 6
ARBITRATION ......................................................................................................... 6
ARTICLE 8 ................................................................................................................ 7
DISCIPLINE ............................................................................................................. 7
ARTICLE 9 ................................................................................................................ 8
SENIORITY .............................................................................................................. 8
ARTICLE 10 .............................................................................................................. 9
LAYOFFS ................................................................................................................. 9
ARTICLE 11 .............................................................................................................. 9
GENERAL CONDITIONS ......................................................................................... 9
ARTICLE 12 .............................................................................................................. 14
AET ASSIGNMENTS ................................................................................................ 14
ARTICLE 13 .............................................................................................................. 14
WAGES AND FRINGE BENEFITS ............................................................................ 14
ARTICLE 14 .............................................................................................................. 15
UNIFORM ALLOWANCE ......................................................................................... 15
ARTICLE 15 .............................................................................................................. 15
GUN ALLOWANCE .................................................................................................. 15
ARTICLE 16 .............................................................................................................. 16
OVERTIME AND CALL-IN TIME ............................................................................. 16
ARTICLE 17 .............................................................................................................. 18
LONGEVITY ............................................................................................................ 18
ARTICLE 18 .............................................................................................................. 18
BEREAVEMENT LEAVE ........................................................................................... 18
ARTICLE 19 .............................................................................................................. 19
HOLIDAYS ............................................................................................................... 19
ARTICLE 20 .............................................................................................................. 19
VACATIONS ............................................................................................................. 19
ARTICLE 21 .............................................................................................................. 20

Exhibit 2

Execution Copy

SICK LEAVE ................................................................................................................... 20
ARTICLE 22 ................................................................................................................... 21
INSURANCE ................................................................................................................... 21
ARTICLE 23 ................................................................................................................... 24
DUTY CONNECTED ILLNESS OR DISABILITY ...................................................... 24
ARTICLE 24 ................................................................................................................... 24
PERSONAL LEAVE DAYS ........................................................................................... 24
ARTICLE 25 ................................................................................................................... 24
EDUCATION ................................................................................................................... 24
ARTICLE 26 ................................................................................................................... 24
ASSIGNMENT OUT OF THE CITY ............................................................................ 24
ARTICLE 27 ................................................................................................................... 25
FUNERAL ESCORTS ..................................................................................................... 25
ARTICLE 28 ................................................................................................................... 25
POSTING OF INFORMATION ...................................................................................... 25
ARTICLE 29 ................................................................................................................... 25
PUBLICATION OF CONTRACT .................................................................................. 25
ARTICLE 30 ................................................................................................................... 25
PENSIONS & RETIREMENT ........................................................................................ 25
ARTICLE 31 ................................................................................................................... 26
SALARY DIFFERENTIALS .......................................................................................... 26
ARTICLE 32 ................................................................................................................... 26
JURY DUTY ................................................................................................................... 26
ARTICLE 33 ................................................................................................................... 26
PROMOTIONS ................................................................................................................ 26
ARTICLE 34 ................................................................................................................... 27
USE OF DISPATCHERS ................................................................................................ 27
ARTICLE 35 ................................................................................................................... 27
RESIDENCY ................................................................................................................... 27
ARTICLE 36 ................................................................................................................... 27
MISCELLANEOUS ........................................................................................................ 27
ARTICLE 37 ................................................................................................................... 28
DURATION ..................................................................................................................... 28
ARTICLE 38 ................................................................................................................... 28
RANDOM DRUG TESTING .......................................................................................... 28

Exhibit 2                                                                                      Melvindale - 68

Execution Copy

# ARTICLE 1
## AGREEMENT

**THIS AGREEMENT** is entered into between the CITY OF MELVINDALE, a Michigan Municipal Corporation (the "Employer" or the "City"), and THE POLICE OFFICERS LABOR COUNCIL (the "Union"), representing the Melvindale Police Supervisors Association.

# ARTICLE 2
## PURPOSE AND INTENT

2.1     The general purpose of this Agreement is to set forth terms with respect to rates of pay, wages, hours of employment and other conditions of employment and to promote orderly and peaceful labor relations for the mutual interest of the Employer, Employer's non-retired employees who are members of the Union and who are police supervisors with the rank of Sergeant and Lieutenant ("Employees" or "Sergeants and Lieutenants"), and the Union.

2.2     To these ends, the Employer and the Union encourage to the fullest degree friendly and cooperative relations between their respective representatives at all levels and among all Employees.

# ARTICLE 3
## RECOGNITION

3.1     The City of Melvindale recognizes the Union as the sole and exclusive bargaining agent for the Employees to the extent permitted and required by Act 336 of the Public Acts of 1947, as amended by Act 379 of the Public Acts of 1965. The City agrees to negotiate with the Union on items relating to rates of pay, wages, hours, and conditions of employment.

3.2     Employer's police officers of appropriate rank shall have the right to join the Union, to engage in lawful, concerted activities for the purpose of collective negotiation and bargaining or other mutual aid and protection, to express or communicate any view, grievance, complaint, or opinion related to the conditions or compensation of public employment or their betterment, all free from any and all restraint, interference, coercion, discrimination or reprisal.

3.3     The City will deduct, upon signed authorization by Employees, all dues and assessments as certified by the Union and forward same to the Union's authorized Treasurer each month. The authorization shall be irrevocable for the term of this Agreement.

3.4     The Employer shall maintain a direct deposit for payroll checks to eligible financial institutions. All employees shall be required to receive their compensation via direct deposit or employee debit card in accordance with Michigan law. A "payroll debit card," as described in MCL 408.476 means a stored-value card issued by or on behalf of a federally insured financial institution that provides an employee with immediate access for withdrawal or transfer of his or her wages through a network of automatic teller machines. The term includes a card commonly known as a payroll debit card, payroll card, and paycard.

4

Exhibit 2                                                                                           Melvindale - 69

Execution Copy

## ARTICLE 4
## AGENCY SHOP

4.1   Any Employee who is not a Union member and who does not make application for membership, shall, as a condition of employment, pay to the Union an amount equal to the Union's regular monthly service charge in an amount equal to the monthly dues and assessments uniformly applied to the members as a contribution toward the administration of this Agreement. Employees who fail to comply with this requirement within thirty (30) days of receipt of written notice from the Union shall be discharged by the Employer.   The Union shall notify the Employer in writing at the same time as notice is given to the Employee.

## ARTICLE 5
## REPRESENTATION

5.1   The Employees shall be represented in all contract bargaining negotiations by a committee of up to three Employees elected by their peers and a representative of the Union. The City shall negotiate with those representatives as herein provided.

5.2   On-duty Employees who are members of the committee described in Section 5.1 shall be permitted to negotiate a working agreement without loss of pay or benefits.   The Employee who is the local president of the Union ("Local President") or his representative shall be permitted a maximum of one full day per month to attend to Union business outside the City, without loss of pay or benefits.

## ARTICLE 6
## GRIEVANCE PROCEDURE

6.1   The informal resolution of differences or grievances is urged and encouraged at the lowest possible level of supervision.

6.2   Every Employee covered by this Agreement shall have the right to present grievances in accordance with the following procedure:

**Step 1.** If an Employee believes he/she has been aggrieved, he/she shall promptly report same to the Local President or representative for investigation.   The Local President or representative shall discuss the Employee's complaint with the Chief of Police or his designee, in an attempt to reach a satisfactory settlement, within seven (7) calendar days after the event, occurrence or knowledge of the facts giving rise to the grievance. The Chief of Police or his designee shall issue a decision at the close of the meeting, unless mutually extended in writing.

**Step 2.** If the matter is not satisfactorily settled through Step 1 above, the Local President or representative shall file the grievance in writing within seven (7) calendar days of the Step 1 meeting with the Chief of Police.

Exhibit 2

Execution Copy

The Chief of Police or his designee shall respond to the grievance within seven calendar (7) days of receipt of the grievance, unless mutually extended in writing.

**Step 3**. If the grievance is not resolved at Step 2 above, it shall be submitted to the Employer's Commission of Public Safety within fifteen (15) calendar days and the Employer's Commission of Public Safety shall consider the grievance at its next regular meeting. The Commission of Public Safety shall, within ten (10) calendar days thereafter, make a written finding regarding said grievance.

6.3   Grievances affecting a number of employees may be treated as a policy grievance.

## ARTICLE 7
## ARBITRATION

7.1   Arbitration shall be invoked by written notice to the other party or intention to arbitrate within ten calendar (10) days of the decision of the Employer's Commission of Public Safety. Should the parties be unable to mutually select an arbitrator within ten calendar (10) days of such written notice, the party invoking arbitration shall refer the matter for resolution to the Michigan Employment Relations Commission ("MERC").

7.2   It shall be the function of the arbitrator, and he shall be empowered except as his powers are limited below, after due investigation to make a decision in cases alleging violation of the terms of this agreement:

A.   He shall have no power to add to, or subtract from or modify any of the terms of any agreement.

B.   He shall have no power to establish salary scales or change any salary.

C.   He shall have no power to substitute his discretion for the City's discretion in cases where the City is given discretion by this Agreement.

D.   If any award of an arbitrator requires the approval of any governmental agency, the said award shall be subject to such approval.

E.   The arbitrator's decision shall be final and binding on the Union, its members, the employee or employees involved and the City.

F.   The fees and expenses of an arbitrator, if any, shall be shared equally by the City and the Union. All other expenses shall be

6

Exhibit 2                                                                 Melvindale - 71

Execution Copy

borne by the party incurring them, and neither party shall be responsible for the expense of witnesses called by the other.

7.3    Costs incurred for the purpose of arbitration, such as the Arbitrator's fees, the Michigan Employment Relations Commission (MERC) fees, hearing room fees, and the like will be shared equally between the City and the Union.  However, each party shall be solely responsible for its own costs of arbitration, such as attorney's fees and witness fees.

## ARTICLE 8
## DISCIPLINE

8.1    All Employees shall have the right to be represented by the Union and the Local President, or his representative, at all disciplinary conferences or procedures, except that the City has the right to take disciplinary action immediately where appropriate.  The City agrees that enforcement of discipline shall generally be progressive, but the parties acknowledge and agree that there may be circumstances that warrant discipline or discharge that may not be "progressive" including, without limitation, acts of violence, gross negligence or conduct which jeopardizes the safety of employees or the public, or conduct that subjects the City to civil or criminal liability, and in all cases will be for just cause.

8.2    Notification within a reasonable time shall be given to the Union of any disciplinary action taken against any Employee, which results in official entries being added to his/her personnel file.

8.3    No Employee shall be discharged or otherwise disciplined, except for just cause. The claim of any Employee that he/she has been unjustly discharged or otherwise disciplined may be processed as a grievance, including arbitration.

8.4    Reprimands issued by the Employer shall be removed from the Employee's file after the expiration of two (2) years from the date of issuance.  If the Employee receives yet another reprimand for a similar offense within the two (2) year period of the first reprimand, the first reprimand will still be removed at the end of the original two (2) year period, but the City shall be permitted to note on the second reprimand that it was issued for a second offense.  The second reprimand with the note concerning the second offense shall be removed at the expiration of two (2) years from the date of issuance of the second reprimand.

8.5    Whenever an Employee receives more than a reprimand, such as a suspension, all references relating to that matter shall be removed from the Employee's file three (3) years after the original action was taken.  If the Employee receives yet another suspension for a similar offense within the three (3) year period of the first suspension, the first suspension will still be removed at the end of the original three (3) year period, but the City shall be permitted to note on the second suspension that it was issued for a second offense.  The second suspension with the note concerning the second offense shall be removed at the expiration of three (3) years from the date of issuance.

7

Exhibit 2                                                                                                          Melvindale - 72

Execution Copy

## ARTICLE 9
## SENIORITY

9.1    The seniority of an Employee within a new rank shall commence on the date of appointment to the new rank after the Employee has completed his probationary period of six (6) months and shall be retroactive from the date of appointment to the new rank.    An Employee shall forfeit his rank seniority rights and his seniority rights with the City only for the following reasons:

      A.    He resigns.

      B.    He is dismissed and is not reinstated.

      C.    He is absent without leave for a period of five (5) days or more (exceptions to this may be made by the Employer on grounds of good cause for failure to report).

      D.    He retires.

      E.    He separates upon permanent disability.

9.3    Time spent in the armed forces, on military leaves of absence and other authorized leaves while in rank shall be included in rank seniority and in seniority with the City.

9.4    Should an Employee voluntarily sever employment with the Employer and, thereafter, is rehired by the Employer, the Employee's seniority and fringe benefits package shall begin as a new Employee hire; provided, however, that this paragraph does not apply to the following :

      A.    An Employee has an approved leave of absence approved by the City's Commission of Public Safety, and the Employee returned during the approved time period; provided however, that the time period does not exceed six months.  Any extensions shall be approved by the City's Commission of Public Safety

      B.    The Employee was subject to an involuntary layoff; or

      C.    The Employee was the subject of workers compensation disability or other extended sick leave approved by the Employer.

8

Execution Copy

## ARTICLE 10
## LAYOFFS

10.1    When there is an impending layoff of Employees, the Employer shall immediately notify the Union.

10.2    In the event of layoffs in the Police Department, it shall be made among all employees in the same classifications as listed in Article 3, according to the length of service.

    A.    The Employees with the least amount of service in rank shall be the first laid off and last to be recalled.  If there is to be a demotion due to a layoff, time in classification will prevail.  Where time in classification is equal, seniority as defined in Article 9 shall prevail.

    B.    A demotion to the next lower rank shall be required before a layoff, provided the Employee had prior time in the classification to which demoted.

    C.    Any officer demoted due to a reduction in force shall be promoted back in the reverse order of demotion without any competitive re-examination for the classification from which he was demoted.

10.3    Any grievance submitted concerning a layoff shall be submitted at the third step of the grievance procedure.

## ARTICLE 11
## GENERAL CONDITIONS

11.1    Maintenance of Conditions

Employee wages, hours, and conditions of employment legally in effect at the execution of this Agreement shall, except as improved herein, be maintained during the term of this Agreement.  The Employer will make no unilateral changes in wages, hours, and conditions of employment during the term of this Agreement, contrary to the provisions of this Agreement. This Agreement shall supersede any rules and regulations governing the Employer's police department where such rules and regulations are inconsistent with the terms of this Agreement. All provisions of the Employer's Charter, ordinances, and council resolutions, as amended from time to time, relating to the working conditions and compensation of Employees in the unit are incorporated herein by reference and made a part hereof, to the same extent as if they were specifically set forth.

9

Exhibit 2                                                                                     Melvindale - 74

Execution Copy

An Employee who is a Sergeant or a Lieutenant shall supervise an additional work assignment if over three (3) police patrol officers are requested or if there is a special request for an Employee to supervise three (3) or less police patrol officers.

11.11   Non-Police Work

Employees shall not be required to serve as school crossing guards or perform animal control duties, except in cases of emergencies.

11.12   Privately-Owned Vehicles

An Employee shall not use his privately-owned vehicles for any police purpose.

11.13   Detective Bureau Assignments

The Detective Bureau shall be staffed by one (1) Lieutenant Employee and two (2) or three (3) police personnel from the patrol union, as assigned by the Chief, in his sole discretion. The Chief, in his sole discretion, may assign one (1) additional Employee Sergeant to the Detective Bureau, if an additional detective at the Sergeant level rank is required. As used in this section 11.13, the term "seniority" shall mean years in the rank. Employees assigned to the Detective Bureau shall be given the designation of detective while serving in that capacity.

The positions shall be filled beginning in August and completed by September 1 of the same year, with the effective date of the first January shift change of the following year.

In the event that there is insufficient bidders to fill an available position, or if an opening occurs during the term of an appointment, the corresponding position will be filled by the Lieutenant or Sergeant Employee with the lowest seniority. The bid selections are made for a one (1) year term.

A Lieutenant or Sergeant Employee requesting to serve in the Detective Bureau but who is not selected due to lack of seniority may reapply at the next bidding

If the Chief of Police assigns a Lieutenant or Sergeant Employee to the Detective Bureau, that Lieutenant or Sergeant Employee may bid out of that assignment after one (1) year from the date of the appointment unless the Lieutenant or Sergeant Employee remains the lowest seniority person in the Union.

In the event that conflicts arise in assignments to the Detective Bureau, or should there occur personnel conflicts among the Sergeant and Lieutenant Employees serving in the Detective Bureau, the Union shall be given the opportunity to resolve the matter first, and thereafter, the Chief of Police may invoke his management rights to resolve such conflicts.

Exhibit 2                                                                                                    Melvindale - 75

Execution Copy

11.14   Permanent Shifts

The parties agree to continue the current permanent shifts pursuant to mutual agreement involving selection of days off and vacation leave, subject to the following:

A.   Shift assignments shall take place on a twenty-eight (28) day rotation, and this will establish the permanent shift rotation for the year.

B.   Each shift period shall be four (4) months, with twenty-eight (28) days rotation. The Union can request rotation adjustment to maintain seasonal selection.

C.   Employees working the afternoon shift shall be given a premium of five cents ($.05) per hour, and Employees working the midnight shift shall be given a premium of ten cents ($.10) per hour.

11.15   Shift Selection and Assignments

A.   Selection of first shift preference, then second preference, then third preference shall be by Employee rank seniority.

B.   Days Off Selection for Employee Lieutenants and Sergeants shall be alternated on a twenty-eight (28) day rotation.

EXAMPLE:   A Lieutenant selects first for a twenty-eight (28) day rotation schedule.  Then, a Sergeant selects first on next twenty-eight (28) day rotation. Then, the Lieutenant selects first on next twenty-eight (28) day rotation.

LIMITATIONS AND CONDITIONS:

1.   Schedules shall be posted up to three (3), twenty-eight (28) day rotations in advance.
2.   Days off selections are continued from the prior twenty-eight (28) day rotation.
3.   No Employee Lieutenant and Sergeant can select the same days off on the same shift, unless authorized by the Chief of Police.
4.   Vacations shall be scheduled and filled in when days off are selected. Vacation selection shall be by shift and by rank seniority and no two (2) Lieutenants or Sergeants on the same shift can be  on vacation at the same time per shift.

13

Exhibit 2                                                                                                           Melvindale - 76

Execution Copy

## ARTICLE 12
## AET ASSIGNMENTS

Alcohol Enforcement Team ("AET") assignments for first pick of detail shall rotate with every twenty-eight (28) day shift schedule beginning with the afternoon shift, then midnights, then days.

The Employees shall have the first selection for AET assignments on Fridays and have first selection for additional AET manpower, as added, at the Chief of Police's discretion. The employees patrol union shall have the first selection for AET assignments on Mondays, Tuesday, Wednesdays, Thursdays and Saturdays.

The detail shall be offered for an eight hour period; however, the detail can be broken into four hour blocks if no Employee or patrol union employee chooses to work the entire eight hour period.

## ARTICLE 13
## WAGES AND FRINGE BENEFITS

13.1   The following wage rates will be effective January 1, 2013 through the term of this Agreement:

A.   Lieutenant
$      61,952.22

B.   Sergeant
$      56,592.35

13.2   The work week shall be defined as consisting of a forty (40) hour week comprised of five (5) eight (8) hour days.

13.3   Each Employee shall receive a One Thousand Five Hundred Dollar ($1,500.00) lump sum payment, payable before September 1 of each year, for salary differentials between the Employer's patrol employees and the Employer's Detective Bureau operations. In the event of retirement, resignation or other termination of employment, this amount shall be prorated from the date of receipt of the prior year's payment and the date of termination with the City.

13.4   The Employer shall maintain the present payroll savings plan for Employees, whereby Employees can place savings in the various financial institutions as available.

14

Exhibit 2                                                                                          Melvindale - 77

Execution Copy

## ARTICLE 14
## UNIFORM ALLOWANCE

14.1    The annual clothing allowance for each Employee shall be Six Hundred ($600.00) Dollars, payable on the Employee's anniversary date.  Said uniform allowance shall be used for uniform maintenance as well as replacement for the prior year.  In the event an Employee terminates employment with the City prior to the Employee's anniversary date, the clothing allowance shall be prorated to the date of termination.

14.2    The Employer agrees to pay for the replacement of uniforms damaged or destroyed in the course of the Employee's duty, except for damage caused by an Employee's own action, such as a cigarette burn, etc.  The amount to be paid by the Employer for damage to uniforms shall be on a prorated basis as determined by the supplier.

14.3    The Employer further agrees to pay for any extraordinary clothing required by the Employer's directive, such as riot clothing, etc.

## ARTICLE 15
## GUN ALLOWANCE

15.1    Employees required to carry a personal gun off-duty shall receive an annual gun allowance of Five Hundred Dollars ($500.00), which shall be paid to each Employee on or before December 16th of each year.  In the event an Employee terminates employment with the Employer, the gun allowance shall be prorated from the date of the last payment until the date of termination of employment.

15.2    The Employer shall furnish each Employee with a gun, badge, cuffs, ammunition, nightstick, holster, and other equipment necessary to the performance of his duties as an Employee, all of which equipment shall remain the property of the Employer.

15.3    Once each year, the Employer shall have the gun checked by an armourer, and any necessary repairs shall be made at the cost of the Employer.

15.4    Upon the regular service retirement of an Employee, the Employee shall be given his regular service weapon that he has carried as his duty weapon at the time of retirement; provided, however, that the Employee is eligible under Michigan law at the time of regular service retirement to purchase a gun.  Title to said weapon shall pass to the Employee from the Employer upon the beginning date of his regular service retirement from the Employer.  In the event the Employee is unable or is not eligible to purchase a gun under Michigan law, the Employee may not designate or assign any rights related to this paragraph to another person.

Exhibit 2                                                                                                Melvindale - 78

Execution Copy

## ARTICLE 16
## OVERTIME AND CALL-IN TIME

16.1   The Employer shall pay each Employee time and one-half (1 ½) for all hours worked in excess of eight in any calendar day, and forty (40) in any work week.

16.2   Overtime pay shall not apply, however, to the time involved in the ordinary and usual change of shift.

16.3   Employees called in outside of their regularly scheduled shift shall receive a minimum call-in pay of four (4) hours pay at time and one-half (1 1/2) the Employee's hourly rate. Any Employee who volunteers to report outside his regularly scheduled shift when called within two (2) hours before his shift begins shall work until his shift begins and shall receive pay at time and one-half (1 ½) of the Employee's hourly rate for actual time worked.

EXAMPLE:   An Employee works one (1) hour and ten (10) minutes. He would get paid for one and one-half (1-1/2) hours.

When an Employee must return to the 24th District Court for an afternoon Court session, the Employee shall be paid for a one (1) hour lunch break commencing at the time of the recess of the morning Court session.

16.4   Available overtime work shall as nearly as possible be offered to Employees working in their rank classification. When an Employee works beyond his regularly scheduled quitting time, overtime for the first hour or fraction thereof shall be computed as follows:

| | | |
|---|---|---|
| 0 – 14 minutes | - | no pay |
| 15 – 29 minutes | - | ½ hour pay |
| 30 – 44 minutes | - | 45 minutes pay |
| 45 – 60 minutes | - | one (1) hour pay |

16.5   Call in is by shift first, four (4) hours or more.

With a Supervisor working, four or more hours, overtime shall be offered to the off duty patrol officers and corporals, highest to lowest seniority on that shift.

If no patrol officer or corporal volunteers for the overtime, then a call is placed to the off duty Employee who is the supervisor from that shift.

If no one from that shift is available for the overtime, off duty patrol officers and corporals from another shift, from highest to lowest seniority shall be offered.

If no off duty patrol officer or corporal is available to work, then an off duty Employee supervisor shall be offered overtime by order of rank.

16

Exhibit 2                                                                                           Melvindale - 79

Execution Copy

If no off duty Employee supervisor is available, it shall be offered on a four-hour before/four-hour after ("4/4") basis to patrol officers and corporals, highest to lowest in seniority.

If no patrol officer or corporal volunteers to work the overtime based on 4/4, it will be offered to Employee supervisors by highest to lowest seniority.

If no patrol officer, corporal or Employee is available overtime, the lowest seniority patrol officer or corporal on a shift shall be ordered to hold over and the oncoming shift of patrol officers and corporals shall be contacted, with patrol officers and corporals being ordered to come in from lowest seniority to highest seniority.

Holdover for less than four hours, shall be offered on a need basis, with highest seniority Employees on the shift being offered first and, if no Employee volunteers, the lowest seniority Employee on the shift shall be required to work overtime.

On the weekend, if an Employee is needed for an arraignment to assist an on-duty detective from the Detective Bureau, the call in shall be applied in the following manner:

Detective Employees to be called first. If no other detective Employee is available, the off duty day shift Employee, from highest to lowest seniority, shall be called first. If not available, then the off duty patrol officers and corporals from that shift shall be called by order of seniority, highest to lowest. If no one is available, the off duty Employees from another shift shall be called by seniority, highest to lowest. If no one is available, the off duty patrolmen and corporals from other shifts shall be called by seniority, highest to lowest. If no one is available, the oncoming shift Employees shall be offered overtime by order of rank seniority, highest to lowest. If no one is available, the lowest ranking Employee, by rank, shall be ordered to work overtime.

The overtime procedure in this Section, may be waived in the event of an extraordinary or emergency situation, such as, but not limited to, storms, disaster, etc.

16.6    A compensatory time bank in accordance with the Fair Labor Standards Act of not more than fifty (50) hours is to be established for overtime. Compensatory time is to be taken so that overtime will not be created. The fifty (50) hours are to be taken in a calendar year, and those which are not used shall be paid off in the second pay period of the following year. At year end, an Employee will be able to retain sixteen (16) hours of compensatory time to roll over into the subsequent year. The compensatory time bank maximum remains at fifty (50) hours. When working a holiday, an Employee may put the eight (8) hours of overtime into the compensatory time bank, with a maximum of no greater than fifty (50) hours.

16.7    For overtime and all applicable fringe benefit purposes, an Employee shall be paid on the basis of annual salary divided by 2080 hours per year.

17

Exhibit 2                                                                                     Melvindale - 80

Execution Copy

## ARTICLE 17
## LONGEVITY

Commencing on the first anniversary date of employment, each Employee shall be paid the sum of Fifty Dollars ($50.00) for each year's service with the City. Said longevity pay shall be payable on the pay period preceding the Employee's anniversary date; provided, however, that if the Employee terminates employment between such preceding pay period and the Employee's actual anniversary date, the Employee shall forfeit the longevity pay and return such amount that was paid by the Employer in the preceding pay period.   The maximum longevity pay an Employee shall receive is One Thousand ($1,000.00) Dollars.  Employees who leave service prior to their anniversary date shall have their longevity pay prorated from the prior anniversary date to the date of their termination with the City.

Employees on personal leave of absence for more than ninety (90) days in an anniversary year shall not receive longevity pay for that year, unless otherwise approved by the City's Public Safety Commission.

## ARTICLE 18
## BEREAVEMENT LEAVE

18.1    In the event of a death in an Employee's immediate family or a member of the Employee's household, the Employee shall be granted five (5) days off exclusive of holidays and vacations.  The Employee shall be paid for all or that portion of said five (5) days that were regularly scheduled workdays.  Leave shall not be included in regularly scheduled off days.  The immediate family is defined as spouse, son, daughter, stepchild, grandchildren, brother, sister, son-in-law, daughter-in-law or the father or mother or stepparent of either employee or spouse.

18.2    An employee shall be granted three (3) days off to attend the funeral of a grandmother or grandfather.  An Employee shall be granted one (1) day off to attend the funeral of a brother-in-law, sister-in-law, an aunt or an uncle.  One (1) day a year may be taken to attend the funeral of person not defined above.

18.3    Bereavement leave must be taken immediately following the death of a member of the Employee's immediate family or other relative.  Leave for any other person may be taken on the day of death or up to two (2) days following the death.

18.4    If the funeral is out of the City of Melvindale, an additional five (5) days may be taken, which days are to be deducted from sick leave, or personal leave days if sick leave is exhausted.

Exhibit 2

Execution Copy

## ARTICLE 19
## HOLIDAYS

19.1    The following list is agreed to between the parties as the dates of occurrence for the holidays listed:

| HOLIDAY | DATE OF OCCURRENCE |
| --- | --- |
| New Years Day | Date of Occurrence |
| Martin Luther King Day | Nationally Observed Date |
| Washington's Birthday | Nationally Observed Date |
| (also known as President's Day) | |
| Lincoln's Birthday | Date of Occurrence |
| Good Friday | Date of Occurrence |
| Easter Sunday | Date of Occurrence |
| Memorial Day | Nationally Observed Date |
| Independence Day | Date of Occurrence |
| Labor Day | Date of Occurrence |
| Veteran's Day | Date of Occurrence |
| Thanksgiving Day | Date of Occurrence |
| Day after Thanksgiving Day | Date of Occurrence |
| Christmas Day | Date of Occurrence |

19.2    Lump sum holiday pay has been eliminated.

19.3    An Employee shall be allowed to take a holiday day on any holiday that does not cause overtime.  The holiday day will be selected by Employee rank, then seniority.

19.4    Those Employees who work on a holiday will be compensated double time for all hours worked during said holiday.  Payment for working on a holiday will be included in the Employees' paycheck following such holiday.

## ARTICLE 20
## VACATIONS

20.1    Each Employee shall be entitled to twenty (20) paid vacation days per year, said days shall be considered as having been earned by the preceding year's employment.  In the event that the employment of the preceding calendar year was for a partial period, the earned vacation days shall be reduced on a pro-rata basis.

20.2    An Employee's vacation shall be divided into a winter vacation, to be taken between January 1 and April 30 of each year or October 1st and December 31st, and a summer vacation to be taken between May 1 and September 30 of each year.  The vacation schedule shall be for vacations to be taken within the calendar year beginning each January 1, so that the

19

Exhibit 2                                                                              Melvindale - 82

Execution Copy

preceding winter and summer vacations shall be within the same calendar year. Each Employee shall choose a two (2) week vacation selection for the winter period and a two week vacation selection for the summer period, by seniority, then rank. An Employee may choose a one (1) week vacation selection for the winter period and the summer period; provided, however, that such selection shall be deemed as the Employee's primary selection and rank in accordance with the following:

20.3    No more than one Employee on the same shift will be allowed on vacation at the same time. The Detective Bureau assignment shall be considered as a separate shift for purposes of this section only. Under this scheduling, it is possible that three (3) members of the Union plus the Detective Bureau may be off at the same time.

20.4    Employees with more than ten (10) years of service, as of June 30 of each calendar year, shall receive an additional five (5) vacation days, which shall be selected after all other Employees have selected their above vacation days on a seniority basis. Employees will receive one (1) additional vacation day upon completion of fifteen (15) years of service, as of June 30 of each calendar year, and one additional vacation day upon completion of each successive year of service. The maximum vacation days for each Employee is thirty (30).

20.5    The vacation schedule may be altered to allow changes in vacations, provided the Chief of Police approves.

20.6    With the approval of the Chief of Police, winter and summer vacations may be joined and taken at one time.

20.7    Upon written approval from the Chief of Police, an Employee may carryover his vacation for one (1) year and take it the following year, or, with approval of the Chief of Police, take vacation days one day at a time.

20.8    The vacation schedule shall be subject to approval of the Chief of Police.

20.9    The parties agree that the method of making vacation selections should be based upon rank, then department seniority, with only one Employee and one of the Employer's other employees in the patrol unit off at one time per shift.

20.10    Upon written approval from the Chief of Police, an Employee may take cash for a vacation day. Cashing in vacation days is limited to five-day increments and Employees are required to request approval from the Chief of Police at least two (2) weeks in advance of any desired payment.

## ARTICLE 21
## SICK LEAVE

21.1    Employees will accumulate sick time at the rate of one (1) day per month. The Employee shall accumulate a sick day bank up to and including a maximum of one hundred

20

Exhibit 2                                                                                        Melvindale - 83

Execution Copy

thirty (130) days. Sick days accumulated in excess of one hundred thirty (130) days will be paid off in the second pay period of the following year. At retirement or termination of employment, the Employee will be paid for the number of accumulated sick days up to and including a maximum of one hundred thirty (130) days. Said payment may be made in a lump sum or said Employee may credit said accumulation until retirement at the option of the Employee. If an Employee chooses to use sick leave days as time off prior to the Employee's effective date of retirement, medical and group insurance shall continue while sick days are being used.

21.2    Employees who use two or less sick days per year will receive an additional five days sick leave credited to their accumulated days. This does not include Employees hired after January 1, 2005.

21.3    For Employees hired after January 1, 2005, sick time will accumulate at the rate of one day per month. The Employee shall accumulate a sick day bank up to and including a maximum of sixty (60) days. Sick days accumulated in excess of sixty (60) days will be paid off in the second pay period of the following year. There are no bonus days for Employees hired after January 1, 2005.

21.4    It is agreed that those Employees with a sick day bank between the new limit of one hundred thirty (130) days and the previous maximum of one hundred sixty (160) days will have their sick day bank balance frozen, and begin following the new procedures outlined in 21.1.

## ARTICLE 22
## INSURANCE

22.1    Group medical benefits shall be made available to the Employee, the Employee's spouse and the Employee's legal dependants ("Plan"). The City agrees to pay medical benefits for Employees, Employees' spouses and legal dependents in accordance with Public Act 152 of 2011. For purposes of this Section, total annual costs includes the premium or illustrative rate of the Plan and all Employer payments for reimbursement of co-pays, deductibles, and payments into health savings accounts, flexible spending accounts, or similar accounts used for health care. For purposes of this Section, medical benefits include, but are not limited to, hospital and physician services, prescription drugs, and related benefits. The Employee's contribution shall be paid through payroll deductions for premiums and spending accounts, co-pays, co-insurance and deductibles. Premiums will be established each year based on the prior year's total annual costs.

The Employer reserves the right to change insurance carriers, in accordance with the law, as long as there is no material reduction in coverage and as long as the Union has at least thirty (30) days to review any proposed changes.

It is understood that during the contract term the Plan continues to include a cost containment provision which requires, among other things, a requirement of second opinions as a prerequisite to certain surgery.

21

Exhibit 2                                                                                    Melvindale - 84

Execution Copy

It is agreed between the parties that the City may offer as optional health insurance coverage a preferred provider option (PPO), or a health maintenance organization (HMO).  If offered, Employees may elect to use these optional insurance programs on a voluntary basis.  It is understood between the parties that the City is not required to offer these optional coverages, but may do so if it deems said programs to be cost effective.

22.2   The Employer agrees to provide optical and dental coverage for the Employee and eligible family dependents as follows:

A.   The Employer agrees to pay reasonable and customary charges for a standard eye examination for the Employee and his dependents;

B.   The Employer shall pay for Lasik surgery for the Employee only (or retired Employee only), up to Seven Hundred Fifty Dollars ($750.00);

C.   The Employer further agrees to pay reasonable and customary charges up to and including One Hundred Dollars ($100.00) for eyeglass frames and lenses, or contact lenses.  Employees and their covered dependents shall be eligible for this optical benefit once in each two (2) year period.

D.   The Plan or its equivalent shall include a dental benefit of One Thousand Five Hundred Dollars ($1,500.00) maximum annually per dependent.

E.   The Employer shall furnish orthodontic coverage for the Employees' dependent children, up to age nineteen (19) years, up to a cumulative maximum of One Thousand Dollars ($1,000.00).

22.3   Employees who retire shall continue in the Plan with coverage for himself and his spouse at the time of retirement, but not subsequent spouses, provided such Employee retiree is not furnished other hospital-medical insurance through another source.  At age sixty-five (65), any Employee retiree eligible for Medicare/Medicaid must enroll therein, and the City insurance will become secondary.  Employee retirees shall have the option to elect additional coverage for eligible dependants at a rate of One Hundred Twenty-five Dollars ($125.00) per month for the first child and Seventy-five Dollars ($75.00) per month for each additional child.  Dependants may re-enter the Plan anytime, as long as they maintain eligible status per the Plan document.

22.4   Group life insurance in the face amount of Fifty Thousand Dollars ($50,000.00), with double indemnity, accidental death, dismemberment, and loss of sight provisions, shall be obtained and maintained in force for each Employee.

22.5   Life insurance, in the face amount of Ten Thousand Dollars ($10,000.00), shall be obtained and maintained in force for each retired Employee.

Exhibit 2                                                                                                          Melvindale - 85

Execution Copy

22.6    The Employer agrees to furnish by insurance, or as a self-insured, sickness and accident benefits in the amount of Two Hundred Fifty Dollars ($250.00) per week for a maximum of twenty-six (26) weeks, commencing on the 49th day after the occurrence of the sickness or accident.  This payment is not in addition to sick days, but an Employee may, at his option during the twenty-six (26) week period, utilize partial accumulated sick days to bring his gross income up to any amount to his daily base pay.

22.7    An Employee may, at his option, withdraw from the group health care insurance plan provided by the Employer.  Any Employee who voluntarily elects to withdraw from the group insurance plan will receive a payment of Three Hundred ($300.00) Dollars per month, paid quarterly by the Employer, in lieu of said group insurance benefits. The voluntary election by said Employee to withdraw from the group insurance plan shall be made between December 1 and December 20 of the year preceding any such withdrawal. Once the Employee has made such election, the election to withdraw from the group insurance plan shall be irrevocable for a twelve (12) month period beginning January 1 following the election. Employees who seek to revoke such election for the subsequent year and return to the group insurance benefits provided by the Employer must notify the Employer in writing between December 1 and December 20 of the year preceding the intention to return to said group insurance benefits. Any such return to group insurance benefits provided by the Employer shall be effective January 1 immediately following the election to return to the Employer's group. The Employee, spouse (subject to 20.3) and eligible dependants (subject to 20.3) could re-enter the group insurance plan, but only at the designated time specified above, except in the case of exigent circumstances outside the control of the Employee.   To be eligible, the Employee must show proof of other insurance coverage. Returning Employees must present the City with a Certificate of Credible Coverage to be eligible to return.

22.8    Maternity Leave is governed by the Family Medical Leave Act (the "FMLA"), subject to the following provisions to the extent that they do not contradict the FMLA. An Employee on maternity leave shall be entitled to Sickness and Accident benefits as provided in 22.6 of this Agreement, with such benefits to begin after the Employee has exhausted all accumulated sick days.  Employees returning to work from a maternity leave shall return with no loss of seniority.

22.9    A retired Employee can receive the above mentioned monthly amount of Three Hundred Dollars ($300.00), paid quarterly. The retired Employee, spouse (subject to 22.3) and eligible dependant (subject to 22.3) may re-enter the group insurance plan, but only at the designated time specified above, except in the case of exigent circumstances outside the control of the retired Employee. At the age appropriate time, the Employee and spouse must elect Medicare/Medicaid as described in 22.3.

To be eligible, the retired Employee must show proof of other insurance coverage. Returning retired Employees must present the City with a Certificate of Credible Coverage to be eligible to return.

Exhibit 2

Execution Copy

## ARTICLE 23
### DUTY CONNECTED ILLNESS OR DISABILITY

23.1   When an Employee is injured or otherwise disabled under circumstances that entitle said Employee to receive worker's compensation benefits, the Employer agrees to supplement the base pay of said Employee for the entire period of disability, or until the Employee is placed on the permanent disability list under the plan. Such benefits that are not solely related to the Employee's presence on the job shall also be paid.

## ARTICLE 24
### PERSONAL LEAVE DAYS

Each Employee shall be entitled to five personal leave days per year. Said personal leave days are non-accumulative. Except in the case of an emergency, the Employee shall give twenty-four (24) hours notice of intent to take a personal leave day. Employees shall have the right to take personal leave days in one-half day increments.

## ARTICLE 25
### EDUCATION

25.1   The Employer shall pay the cost of tuition and any necessary expense in connection with job-related training, provided the Employee is ordered to take said training by the Employer. The Employer will post notices of all schools that are open to eligible Employees, and they will be allowed to volunteer for these schools. At the Chief of Police's discretion, volunteers will be allowed to attend said schools.

25.2   The Employer shall pay the costs of tuition for Employees taking any job-related college courses in the following amounts: with a grade of an A, 100% tuition paid; with a grade of B, 75% of tuition paid; with a grade of C, 50% of tuition paid. Any course or class required in a job-related curriculum shall be considered a job-related course and eligible for the payments as above-specified.

## ARTICLE 26
### ASSIGNMENT OUT OF THE CITY

Employees on special assignment outside of the City of Melvindale for authorized business for one (1) day or more shall be paid at their regular rate of pay for eight (8) hours per day or forty (40) hours per week. In the event that over eight (8) hours per day or forty (40) hours per week are worked outside of the City of Melvindale, the overtime rate shall apply for all hours worked in excess of eight (8) per day or forty (40) per week. This paragraph shall not apply to assignments resulting from riot, insurrection, or civil commotion. Each Employee shall receive a meal allowance of not more than Eight Dollars ($8.00) for each meal he must purchase

24

Exhibit 2                                                                 Melvindale - 87

for himself while on a special assignment out of the City of Melvindale, which shall include attendance at courts located in Detroit, Michigan. Appropriate verification is required before payment will be made.

## ARTICLE 27
## FUNERAL ESCORTS

Funeral escorts for police officers from other departments who are slain in the line of duty are to be provided only with the approval of the Chief of Police and within a One Hundred Twenty-five (125) mile radius of the City of Melvindale.

## ARTICLE 28
## POSTING OF INFORMATION

The Employer shall not post the names, addresses, phone numbers or any other information about Employees in places accessible to the general public. The Employer shall not post work schedules, vacations and similar schedules and notices in an area generally accessible to the public.

## ARTICLE 29
## PUBLICATION OF CONTRACT

Within thirty (30) days of the signing of this Agreement, the Employer shall publish the complete Agreement, and furnish a copy to each Employee and a copy to the Union.

## ARTICLE 30
## PENSIONS & RETIREMENT

30.1    Active Employees as of January 1, 1995 shall be provided with the Municipal Employees' Retirement System ("MERS") pension system with the following benefits and optimal riders: benefit level B-4 (2.75 multiplier adopted in 2007), riders F50/25, FAC 3 (as calculated by MERS), and RS50. 2.75 – 80% maximum. Also included is the duty disability pension supplement D-2 rider for any duty disability pension, up to a maximum of eighty (80%) percent of the Employee's earnings in effect at the time of the duty disability retirement. Said earnings are as calculated by MERS for the purpose of computing the Employer's portion of the duty disability pension supplement. It is understood that this supplement shall be in addition to the benefit level received by the affected duty disability retiree under the MERS system and shall not exceed eighty (80%) percent of the Employee's Final Average Compensation ("FAC") under the MERS system in effect at the time of the duty disability retirement. The 2.75% multiplier shall apply. Employees shall have a refundable contribution rate of up to six percent (6%) of total wages that the Employee contributed.

30.2    Employees joining the Union after September 30, 1997 shall maintain the retirement provisions in the Employer's patrol union, including the same employee contribution rate.

25

Exhibit 2

Execution Copy

30.3   After declaring retirement on a date certain and providing notice to the City in writing of such retirement date, an Employee who uses vacation days and personal days in lieu of a lump sum payment:

A.   Shall continue with medical and group insurance while such days are being used prior to retirement; and

B.   Effective June 20, 2015, shall not accrue further vacation or personal time while such days are being used prior to retirement.

## ARTICLE 31
## SALARY DIFFERENTIALS

The parties agree there will be no wage increase during the term of this Agreement.

## ARTICLE 32
## JURY DUTY

An Employee who is called in for jury service shall receive the difference between the Employee's regular daily pay, less the amount received as jury pay.

## ARTICLE 33
## PROMOTIONS

33.1   Promotions to the rank of Lieutenant shall be based upon examinations.  There shall be a written examination, which shall be given a weight of sixty (60%) percent and an oral examination, which shall be given a weight of forty (40%) percent.

33.2   No Sergeant shall be eligible to take the examination for the rank of Lieutenant until he shall first have two (2) full years in rank as a Sergeant at the time the examinations are administered.  Each Sergeant taking the examinations will receive one-twelfth (1/12) of a point for each month of service in rank over two (2) years.    If no Sergeant has two (2) full years in rank as a Sergeant at the time promotional opportunities arise, the City may, at its discretion, promote by seniority in rank.  The parties agree that should only one Sergeant be eligible to take the Lieutenant examination because no other Sergeant has two (2) full years in rank as a Sergeant, no test shall be required for the one eligible Sergeant to be promoted to Lieutenant.

33.3   Written tests shall be conducted by the independent testing agency Empco, Inc., unless the parties mutually agree upon another testing agency.  The oral examination shall be administered by a third party selected by the independent testing agency, or by an independent panel as determined by the Chief of Police.

33.4   A minimum passing score on the written examination of sixty percent (60%) for the Lieutenant's examination is required prior to further testing.  If no one passes the written

26

Exhibit 2                                                                                                                    Melvindale - 89

Execution Copy

examination, then all participants shall be retested.  In the event of a tie, departmental seniority, not prior Employer-wide seniority, shall govern.

33.5   The test bibliography and test date for the Lieutenant's examination shall be made available at least thirty (30) days in advance by the testing agency.

33.6   Promotional lists shall be in effect for two years from the date of certification by the Public Safety Commission.  The testing process shall begin within thirty (30) days after the expiration of the promotional list.

33.7   Promotions will be based upon the promotional eligibility for Lieutenants and Sergeants, and will be staggered to clearly state seniority dates.

## ARTICLE 34
## USE OF DISPATCHERS

It is understood that the Employer may, at its discretion, employ and utilize civilian dispatchers to perform desk functions.   It is understood that if the dispatchers are hired by the Employer, it will be in the non-classified service.

## ARTICLE 35
## RESIDENCY

All Employees shall be permitted to reside wherever they choose within a twenty (20) mile radius of the City of Melvindale. After a minimum of ten (10) years seniority with the City, all Employees shall be permitted to reside wherever they choose within a sixty (60) mile radius of the City of Melvindale.

## ARTICLE 36
## MISCELLANEOUS

36.1   The changes in wages, benefits, and conditions of employment in this Agreement inure only to those Employees who are on the active roster on the date of this Agreement is signed by the parties, or who are placed on the active roster prior to expiration of this Agreement.

36.2   Police academy service credit will be given if the same is obtained by the fire union.

36.3   This Agreement contains the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior negotiations, understandings or agreements.  This Agreement may only be modified by a writing signed by both parties.  The headings appearing in this Agreement have been inserted as a matter of convenience.  If there is any conflict between the headings and the text of this Agreement, the text shall control.

27

Exhibit 2                                                                                                          Melvindale - 90

Execution Copy

36.4    All references to gender shall be deemed to refer both sexes.

36.5    Prior to the execution of this Agreement, the parties made significant modifications to the form of the Agreement through contract clean-up. During that clean-up process it was not the purpose to change the spirit or intent of the Agreement.

36.6    In the event an emergency manager is appointed pursuant to the Local Government and School District Fiscal Accountability Act, Michigan Act 4 of 2011, as may be amended, this Agreement may be rejected, modified or terminated by the Emergency Manager.

36.7    The City retains the ability to contract out services or utilize part-time workers or contractors consistent with its obligation to provide services to the public.  Prior to utilizing part-time workers or contractors, the City will notify the Union and sit down and discuss the issue with them, and the parties shall agree prior to any utilization of part-time or contract workers. The City agrees that it will not lay off any Employees as a result of the utilization of contractors or part-time employees.  Laid off Employees shall be recalled on the basis of seniority prior to the utilization of contractors or part-time workers.

**ARTICLE 37**
**DURATION**

37.1    The terms in this Agreement shall be effective on ___6-25-14___ and shall continue in full force and effect through midnight December 31, 2016, without retroactivity of any of the terms.  Between January 1, 2013 and ___12-31-16___, the terms of the City of Melvindale and Police Officers Labor Council agreement which was extended through December 31, 2012, were in effect, unless otherwise nullified by law, and are hereby ratified by the parties.

The parties may mutually agree to open this Agreement on or after December 31, 2014, for the sole purpose of negotiating changes to Article 13 of this Agreement.

37.2    The parties shall commence negotiations immediately on such proposed amendments for a succeeding contract one hundred twenty days (120) prior to expiration of this Agreement.

37.3    During the course of negotiations if said negotiations continue after the expiration date of this Agreement, the parties may mutually agree to monthly extensions in thirty (30) day increments, and upon such agreement, the parties shall sign such extensions and upon the signing of such extensions the terms of this agreement shall remain in full force and effect for the agreed upon periods of extensions.

**ARTICLE 38**
**RANDOM DRUG TESTING**

38.1    Drug testing shall be randomly conducted on an unannounced basis any time during an Employee's shift or after any given shift.

28

Exhibit 2                                                                                          Melvindale - 91

Execution Copy

38.2    Rate of testing – random controlled substance testing shall be administered at an annual rate of fifty (50%) percent of the command positions.  Such testing will be unannounced and reasonably spread throughout the calendar year.

38.3    The selection of Employees shall be based upon a random computer-generated list.  Each Employee will have an equal chance of being selected each time a list is generated.

38.4    Any Employee selected for testing will immediately report to the designated testing facility.  Any Employee selected, but who is absent for any reason, will be sent immediately to the designated testing facility upon his return.

38.5    In all other respects, the Agreement is hereby affirmed, ratified, and agreement to be in full force and effect in all respects, except to the extent that this Addendum expressly supersedes the Agreement.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Exhibit 2                                                                                                    Melvindale - 92

Execution Copy

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on this 25th day of June, 2014.

**MELVINDALE POLICE SUPERVISORS' ASSOCIATION**

**CITY OF MELVINDALE**

_____
John Allen

_____
Stacy L. Striz, Mayor

_____
Donald Meador

_____
Diana Zarazua, City Clerk

_____
Michael Welch

**POLICE OFFICERS LABOR COUNCIL**

_____
Chet Kulesza

30

Exhibit 2                                                                                                    Melvindale - 93